Thomas, Trustee of White, v. Zumbalen et al.

———◆———

EZRA THOMAS, Trustee of CHARLOTTE WHITE, Appellant, *v.* AUGUSTA ZUMBALEN and H. KROEGMEYER *et al.*, Respondents.

43 471<br>149 268

1. *Landlord and Tenant — Leases and under-leases — Surrender of leasehold by implication—Forfeitures—Terms in law and equity.*—A. leased certain premises to the trustee of B. for sixteen years. B. underlet them to C. for three years. Afterward an arrangement was effected between A., B., and C., by which, in order to cancel a debt from B. to C., A. was to give C. the lease of the premises for two and a half years, on the same terms as those of B.'s lease; at the expiration of which time B. was to have possession under the original lease. C. held over after his term, and succeeded in procuring from the representatives of A. a lease for the remainder of B.'s sixteen-years' leasehold: *Held*, that the consent of B. to the two-and-a-half-years' lease to C. was not a surrender of her original leasehold, but that the new leasehold, being made for her use, was a clear recognition of her rights under the old one. A surrender by implication must be in conformity with the intention of the parties. A surrender will not be implied when it is obvious that the second lease was intended to be beneficial, and that the lessee was not to lose any of the rights that he possessed. A. had no right, without the consent of B., to give the lease to C. for the remainder of the sixteen years. In holding over his term he elected, so far as he had power to elect, to continue in possession under the conditions of his lease. By paying ground rent he saved the original lease from forfeiture, and rendered any subsequent attempt to forfeit it a fraudulent sham. The claim of B. was good for her full term, and C. had no rights under his lease as against her.

2. *Landlord and Tenant — Tenant holding over — Rent, what payable.*— Ordinarily, the measure of the obligations by way of rent of a tenant holding over is the terms of his lease. But if a higher rent is demanded, or if it is clear that there is no implied consent to his remaining on those terms, the rule will not apply. He certainly, as the wrong-doer, cannot consent to its application, but the landlord may. Where, at the expiration of his term, proceedings were instituted at once to oust the tenant, he should be held to pay all the premises were worth, less ground rent and taxes, after the expiration of his term.

*Appeal from St. Louis Circuit Court.*

*Beal & Knox,* for appellant.

I. The lease of Zumbalen to Kroegmeyer inures to Charlotte White, because: 1. Kroegmeyer was lessee of Mrs. White by lease of March, 1861, for three years; 2. He was mortgagee by deed of trust of 4th of October, 1860; 3. He was in possession under lease of 27th of December, 1861, as tenant of Henry Zumbalen, for use of Mrs. White, to restore it to her by an agreement between Henry Zumbalen, Henry Kroegmeyer, and White. "If a mortgagor, executor, trustee, or tenant for life, etc., having a limited interest, gets advantage, by being in possession or otherwise, in obtaining a new lease, he is not allowed to retain it for his own use or benefit, but must hold it for the mortgagor or trustee," etc. (Holridge v. Gillespie, 2 Johns. Ch. 30; Jones v. Kearney, 1 Dru. & War. 161–2; Aspinwall v. Jones, 17 Mo. 209.)

II. The lease of Mrs. White was not forfeited, because, where the lease had a condition that the lessee should pay all taxes, no forfeiture inures until there is a proof of demand of payment of taxes within the period required by law for judgment. (17 Johns. 66.) To create a forfeiture of lease there must be a formal demand of the precise sum for the last current quarter, and the demand must not include any portion of the rent of previous quarters. (Taylor's Land. and Ten. § 493.) The lessor must prove a demand of rent on the last quarter-day of payment, at convenient time; and without compliance with all the formalities of the common law there is no forfeiture. (17 Johns. 66.) According to these authorities the lease of Mrs. White was not forfeited at the time the new lease to Kroegmeyer was made, because he paid the rents and taxes, and because the attempted forfeiture was made fraudulently, on a demand of payment, in a lump, of several quarters—not on the last day of payment, at a convenient place, and on the premises. The defendant cannot set up the new lease and attempted forfeiture, to defeat Mrs. White and deprive her of the leasehold, by a forfeiture fraudulently brought about by himself and for his own benefit.

III. Where a tenant takes possession under a lease (as Kroegmeyer, in April, 1861) and enjoys the property, he cannot dispute the title of the landlord after expiration of the lease. (3 Phil. Ev. 201; Jackson v. Spear, 7 Wend. 401.)

IV. The obligation on a tenant not to dispute his landlord's title after expiration of the lease extends to the lessee and his successor holding under lessee. (3 Johns. 499; 14 Mo. 535; 16 Mo. 162.)

V. A tenant continuing in the possession after the expiration of his term will be presumed to hold under and subject to the previous lease. (Quinette v. Carpenter, 35 Mo. 502; Pacific R.R. v. Lindell, 39 Mo. 329; Hunt v. Bailey, 39 Mo. 257.)

VI. The acceptance of rents and performance of covenants in lease after breach of condition is a waiver of forfeiture—it is an estoppel. (40 Mo. 449.)

*Jecko & Clover*, for respondents.

The decree was properly rendered for the defendants, dismissing the bill. There was an entire want of equity in the complainant's case, as made by the bill in his own showing.

BLISS, Judge, delivered the opinion of the court.

On the 5th of June, 1853, Philip Rock made to Ezra Thomas, trustee for Charlotte White, a lease of a city lot in St. Louis for sixteen years and five months, reserving the sum of $78.75 annually for ground rent, payable quarterly, and stipulating that the lessee should pay all taxes and assessments for grading, paving, etc., and at the end of the lease to have the right to remove all buildings and improvements erected on the lot. The lease also had a clause of forfeiture upon non-fulfillment of its conditions. Mrs. White and her husband erected a building upon the lot, and, in March, 1861, leased it to defendant H. Kroegmeyer, for three years, at $400 a year, who was to pay the ground rent out of that sum. In the meantime Philip Rock had died, and Henry Zumbalen had been appointed curator of his minor children. After Mrs. White had removed to Jefferson county, Zumbalen sued out a landlord's writ of dispossession for non-

payment of the ground rent, and recovered an informal judgment. Mr. and Mrs. White had become indebted to Kroegmeyer over $600, and it was expected that the rent of the premises, except the ground rent, would be applied to pay that indebtedness — Kroegmeyer having also a trust deed of the leasehold estate to secure the debt.

On the 27th of December, 1861, a compromise of the whole matter was made between Mrs. White, Zumbalen, and Kroegmeyer, by the terms of which Zumbalen was to give to Kroegmeyer a lease of the premises for two and a half years from the first of January, 1862, upon the same terms as the original lease ; the forfeiture was to be waived. At the end of the two and a half years, Mrs. White was to have possession under her original lease ; and as a consideration for Kroegmeyer's lease, he was to cancel the indebtedness of Mr. and Mrs. White to him, and give up their notes, and pay the back and accruing ground rent. This agreement was carried out on behalf of Mrs. White— Zumbalen, by her consent, executing the lease, with the stipulation as to her notes indorsed on the back ; and Kroegmeyer enjoyed the premises for the full term, without disturbance, his lease expiring July 1, 1864.

The animus of Kroegmeyer, as afterward fully developed, became apparent in 1863, in a fraudulent attempt then made to procure a transfer to himself of the whole interest of Mrs. White in her leasehold estate. As the beneficiary of their deed of trust of 1860, to secure the indebtedness of Mr. and Mrs. White to him, which had been fully paid by the two-and-one-half-years' lease, he procured a trustee's sale of the property, which was bid off by a third party and conveyed to another, and by him to Kroegmeyer. Zumbalen's agent attended the sale, exposed the fraud, and " notified all persons present that the debts were paid."

In August, 1864, just after the expiration of the two-and-one-half-years' lease, Kroegmeyer holding over his term, a suit of unlawful detainer was instituted against him in the name of Zumbalen, though at the instance of Mr. and Mrs. White, for their benefit and at their expense. This suit resulted in favor of

defendant before the justice, and an appeal was taken to the St. Louis Land Court. Soon after, Zumbalen, who seems to have acted in good faith toward Mrs. White throughout, died. Mrs. Zumbalen was appointed curatrix of the children, and at the October term, 1865, the suit was revived in her name. The case was continued along until the April term, 1866, when it was dismissed at the instance of the plaintiff, Kroegmeyer continuing in possession—Mrs. Zumbalen having, as curatrix, on the 13th of April, executed to him a lease for the remainder of the term of Mrs. White, for the yearly payment of $140, rent, taxes, etc. Thus Kroegmeyer seems to be securely possessed of the whole of Mrs. White's property in the lease and improvements.

The record discloses the steps by which he obtained the property. On the 13th of April, 1866, Kroegmeyer, with his attorney, goes to Mrs. Zumbalen and settles the suit. He pays her the ground rent due; she gives him a receipt in full, with an agreement to dismiss the suit, and executes to him the lease. Everything was done by Kroegmeyer's attorney, and it was then agreed that notice of forfeiture should be served on Mrs. White, which was accordingly drawn under date of the 16th, three days after, by the same attorney, and served upon Mr. and Mrs. White, in Jefferson county. Mrs. Zumbalen testifies that on the 13th of April, 1866, Kroegmeyer and J. J. McBride came to her house and settled the suit of Zumbalen; paid her the ground rent; paid the costs of court; and she signed the notice prepared by J. J. McBride for forfeiture of the lease, which was served on Mr. and Mrs. White; and she dismissed the suit and executed a new lease of the property to Kroegmeyer. Did not consult with White and wife before dismissing the suit.

The foregoing are the main facts developed by this record, and seem to be clearly established. There are other questions of fact in regard to the regularity of the judgment of ouster that was compromised, and the original legality of the trust deed, but it is unnecessary to consider them. The proceeding is upon a petition in the nature of a bill in equity, charging fraud upon Kroegmeyer, and asking that he be adjudged to hold the lease for the use of the plaintiff, for an account, etc. There is no question

as to the whole character of his conduct ever since he took the first lease, in 1861 — and by neglecting to pay the ground rent suffered a judgment for possession to be obtained — down to April, 1866, when he obtained complete control of the property, having in the meantime enjoyed its possession without paying any rent to Mrs. White, except for the two and a half years. He has not only obtained the term, cut off the plaintiff from her income from the rent, but all the improvements have become his, and without any consideration whatever to the owner. The only defense seems to be that Mrs. White is without remedy, and such seems to have been the opinion of the Circuit Court. But we see no substantial difficulty in doing justice in the premises. The doubt in the matter arises principally from an apparent yielding by Mrs. White of her interest in surrendering the term—in consenting that Kroegmeyer's lease should be taken directly from Zumbalen. It ought to have been executed by the plaintiff, her trustee. He had the legal estate. The judgment of forfeiture seems too irregular to effect it, and he should have controlled it. But the trustee seems to have left everything to his *cestui que trust*, and, by putting it in the power of the curatrix of the original lessor's heirs to apparently sacrifice her rights, she has made the matter a little more complicated. But if the first forfeiture were not wholly void, but only erroneous, and good till reversed, the curatrix of Rock's heirs cannot avail herself of it in equity, for the reason that her predecessor renounced all their rights under it by the lease to Kroegmeyer, for the use of Mrs. White, giving her all its benefits and stipulating that she should have the premises as before at the end of the two and a half years.

It seems strange that the action of forcible detainer, prosecuted by Mrs. White in the name of the curator, was not at once decided in her favor, unless Kroegmeyer succeeded in befogging the tribunal with the fraudulent deed he had obtained through the sale upon the satisfied deed of trust; and it seems also strange that the matter could have so hung along in the Land Court, and I can only account for it from the fact that the plaintiff, Thomas, gave the matter no attention, that his *cestui que trust* resided

abroad, and that Kroegmeyer was vigilant in prosecuting his fraudulent schemes.

The consent of Mr. and Mrs. White to the short lease to Kroegmeyer was not a surrender of the original lease, even if the *cestui que trust* had the power to surrender it; but the new lease, being made for her use, was a clear recognition of her rights under the old one. "A surrender by implication must be in conformity with the intention of the parties. A surrender will not be implied when it is obvious that the second lease was intended to be beneficial, and that the lessee was not to lose any rights he possessed." (Van Rensselaer's Heirs v. Penniman, 6 Wend. 569.)

Though nominally Kroegmeyer was the tenant of Zumbalen, yet the interest of the latter in the lease was far less than that of Mrs. White. The plaintiff, as her trustee, was Kroegmeyer's equitable landlord. The term covering that of Kroegmeyer was his; a small portion of it, by consent of his *cestui que trust* and for her use, was granted by the curator to Kroegmeyer; and the rules that apply to the relation of landlord and tenant ought, in an equitable action, to be applied to him and Mrs. White. Having assumed the relation of tenant, he cannot escape it by any fraudulent trick or contrivance. He seems to have abandoned his claim to the property by virtue of the deed of trust, and seeks to obtain it through the curatrix of the original lessor's heirs, and, having obtained a lease from her, fancies himself shielded from any claim from Mrs. White. But what right had Mrs. Zumbalen, without the consent of plaintiff or Mrs. White, to give him a lease? In holding over his term he elects, so far as he had power to elect, to continue in possession under the conditions of his lease. In paying the back ground rent he only did his duty. The conditions of his lease, so far as the curator is concerned, should measure his obligations while holding over. (Quinette v. Carpenter, 35 Mo. 502; Hunt v. Bailey, 39 Mo. 257.) By thus paying the ground rent he saved the original lease from forfeiture, and thus rendered the subsequent attempt to forfeit it a fraudulent sham.

Kroegmeyer's present lease can avail him nothing as against the plaintiff. The heirs of Rock had in equity no estate to demise.

31—VOL. XLIII.

There was in equity, if not in law, an outstanding term in the plaintiff, which not only was not forfeited, but by receiving the rents their curatrix had put it out of his power to forfeit it. The plaintiff's claim is good for his full term, and Kroegmeyer has no rights, under his lease, as against him. Ordinarily, the measure of the obligations by way of rent of a tenant holding over is the terms of his lease. But if a higher rent is demanded, or if it is clear that there is no implied consent to his remaining upon those terms, the rule will not apply. He certainly, as the wrong-doer, cannot consent to its application, but the landlord may. In the case at bar, proceedings were instituted at once to oust the tenant, and he should be held not only to pay the rent due before his two-and-a-half-years' lease, unless it should be found that the extinguishment of that rent was had or provided for when the lease was made, but also all the premises were worth, less the ground rent and taxes, after July 1, 1864.

Defendant's counsel, in resisting this claim, contend that if a lessee forfeits his term, it is no fraud for a stranger to assist in having the forfeiture declared, and afterward himself purchase the remainder of the term or become a tenant of the landlord. There might be plausibility in the position in regard to a stranger. But Kroegmeyer holds no such place. He was a tenant of plaintiff, in equity, and suffered all the defaults upon which the several forfeitures are based; and the misfortunes of the plaintiff's *cestui que trust* are chargeable alone to his misconduct. It would be contrary to every principle of equity to permit him to profit by his own wrong. Chancellor Kent (in Holridge v. Gillespie, 2 Johns. Ch. 30) lays it down as a general principle, pervading all the cases, that "if a mortgagee, executor, trustee, tenant for life," etc., " who has a limited interest, gets an advantage by being in possession or behind the back of the party interested in the subject, or by some contrivance in fraud, he shall not retain the same for his own benefit, but hold it in trust."

In Jones v. Kearney, 1 Dru. & War. 134, the plaintiff was entitled to an annuity out of a leasehold; and defendant, having purchased the lease and being under obligation to pay both the annuity and rent, neglected to do so, suffered ejectment, and took

a new lease for a new consideration. The new lease was held subject to the annuity. The Chancellor says: "No one will dispute this: that if a lessee have a lease subject to an existing encumbrance, which he is bound to see satisfied, this court would lose sight of its highest duty if it for one moment permitted such a person, by permitting a breach of contract, to divest himself of the estate and acquire a new interest discharged of the old encumbrance."

These two cases, among the numerous ones that might be cited, recognize the clear rights of the plaintiff in this suit. The Circuit Court should have held the present lease of Kroegmeyer to be taken for the use of plaintiff, and ordered an account of what was due him or Mrs. White as tenant. Or it might have set aside the fraudulent sale and trust deed through which Kroegmeyer obtained a deed of plaintiff's leasehold, set aside both forfeitures and the lease of Mrs. Zumbalen to him, and declared the original lease to plaintiff in force.

The judgment is reversed and the cause remanded.