### LEWIS v. PERRY et al.; TAYLOR, Appellant.

#### Division One, March 31, 1899.

1. **Landlord and Tenant**: HOLDING OVER OF TERM.   When the tenant with the consent of the landlord, express or implied, holds over his term, the law implies a continuation of the original tenancy upon the same terms as those contained in the original lease.

2. ———: ———: RIGHT TO REMOVE IMPROVEMENTS.   Where by the terms of a lease the tenant has the right to remove the improvements constructed by him, and although the time has passed in which, by the lease's terms he can give notice of his intention to renew the lease for a stated period and compel a readjustment of the rental charges, yet being in possession under the lease, whether it be a tenancy under the lease or a tenancy from year to year, from month to month, at will, or by sufferance, he has the right, so long as that tenancy lasts and for a reasonable time thereafter, to remove the improvements.

3. ———: ———: ———: PARTITION.   And where a tenant, before the termination of his lease which gives him the right to remove the improvements, has acquired the interest of a part of the cotenants in the land, and within a reasonable time after its termination and while yet in possession he brings suit in partition, the other cotenants should not be permitted to share in the value of the improvements.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

VALLE REYBURN for appellant.

The court had no power to render the interlocutory decree, for the lease had terminated so far as appellant was

concerned, and he was the owner of the improvements in the same ratio in which he was owner of the fee title to the realty.   R. S. 1879, sec. 6371; Withnell v. Pezold, 104 Mo. 409; 2 Woods' Landlord & Tenant (2 Ed.), sec. 529; Loughran v. Ross, 45 N. Y. 792; 2 Taylor's Landlord & Tenant (18 Ed.), sec. 552.

JOHN H. OVERALL for respondent.

(1)   The continuing in possession by the tenant was evidence of an election to renew and the receipt by the landlord of rent for ten years without objection is evidence of assent to such renewal and the election by the tenant and the assent by the landlord constituted a renewal as completely as if the forms prescribed by the terms of the lease had been strictly complied with.   Kelso v. Kelly, 1 Daly, 419; Holman v. Abrams, 2 Due, 446; Van Rensselaer v. Penniman, 6 Wend. 569; Cure v. Crawford, 5 How. 293; Kramer v. Cook, 7 Gray, 550; Cretin v. Doney, 1 Comstock, 419; Goodright v. Richardson, 3 T. R. 462; Ferguson v. Cornish, 3 T. R. 463; Dann v. Spurrier, 3 Bos. & Pul. 399; Webb v. Dixon, 9 East, 15; Taylor's Landlord and Tenant, 819; Brewer v. Thorp, 35 Ala. 9.   (2)   When the lessee holds over and the lessor receives rent accruing after the expiration of the term, a new tenancy arises for a further term, subject to the covenants and conditions of the original lease, one of which was the privilege of removing the improvements.   Hunt v. Bailey, 39 Mo. 257; Taylor's Landlord and Tenant, sec. 60; Jackson v. Solomon, 4 Wend. 327; Webber v. Sheaman, 3 Hill, 547; Bennock v. Whipple, 3 Fairf. 340; Quinette v. Carpenter, 35 Mo. 502.   (3)   The mere holding over of a tenancy does not affect the tenant's right to remove improvements put in during the term of his previous lease so long as he holds over under a fair claim of right as tenant. Penton v. Robart, 2 East, 88; Discount Co. v. Drake, 5 C. B. New Ser. 796; Heap v. Barton, 12 C. B. 274; Merritt v.

Judd, 14 Cal. 59; Mason ex rel. v. Finn, 13 Ill. 525; Davis
v. Moss, 38 Pa. St. 346; Antoni v. Benknap, 102 Mass. 193; .
Bucher v. Parker, 40 Mo. 118; Brown v. Wolff, 16 Mo. App.
552.        .        .

BRACE, P. J.—This is a proceeding in partition in
which George R. Taylor, one of the defendants, appeals from
the interlocutory .decree of the circuit court determining the
respective rights and interests of the parties in the premises
and ordering a sale thereof.   By the decree it was in effect
determined that the appellant was entitled to an undivided
one-fourth part of the land, and the other parties to the other
undivided three-fourths thereof, as tenants in common in fee
simple, but that the improvements thereon belonged to the
other parties, and appellant had no interest therein, and upon
this basis partition was decreed; the court in the decree deter-
mining further the interests of the other parties to the ac-
tion, in the improvements, and ordering separate sales of the
land and the improvements, and giving to the purchaser of
the latter the right to remove the same within sixty days af-
ter the approval of the sale.

The exclusion of appellant from a share in the improve-
ments is the sole ground of his complaint, his contention be-
ing that he is entitled to a share in the improvements propor-
tionate to his share in the land, and this presents the only
question in the case.

The undisputed facts in the case are, that George R.
Taylor, Senior, died testate, seized of the premises.   By
virtue of the power conferred upon them by the will of said
deceased, Albin Miller and John Maguire, his testamentary
trustees, by a written instrument duly executed on the
twenty-first day of July, 1881, leased the premises to the St.
Louis Malleable Iron Company, upon the following terms
and conditions:

"In consideration of the covenants, agreements and stip-
ulations hereinafter mentioned, as well as the rent of the

twenty-four dollars and thirty-seven cents to be paid on the first day of September, A. D. 1881, and the yearly rent of two hundred and ninety-two dollars and fifty cents thereafter during the term of this lease, payable in quarterly instalments of seventy-three dollars and twelve cents each on the first day of March, June, September and December in each year, the first of said quarterly payments to be made on the first day of December, 1881, together with all general and special taxes which may be assessed against said property during the continuance of the lease or the renewals thereof, the said parties of the first part do by these presents lease to the said party of the second part for the term of four months and three years, which said term shall begin on the first day of August, 1881, and end on the said first day of December, 1884, the following described lot of land, to wit: A parcel of land in the city of St. Louis, State of Missouri, situated in block 1698 of said city, and fronting seventy-five feet on the south line of Market street, and with that width running southwardly for a depth of one hundred and thirty-two feet, more or less, to the alley, running east and west, and being composed of lots numbered 10, 11 and 12, of the subdivision made by George R. Taylor, of part of lot one of the second series of the Chouteau Mill tract, and of which subdivision a plat is on file in the recorder's office of the city of St. Louis, in plat book number 3, page 124. Every failure, first, to pay the said installments of rent or any part thereof, when they are respectively payable, or within fifteen days thereafter; or, second, to pay the said city and State taxes or all other taxes on demand, or any part thereof, legally required or demanded of said premises within the year the same shall become due and assessed, and any failure of said lessee or its representative to keep and perform any of the other covenants, agreements or stipulations herein, shall make and create a forfeiture of this lease and a termination of the time for which the above premises were let and all the estate

hereby conveyed shall be absolutely void, if so determined at any day or time, however distant after such failure, by notice in writing to that effect given by said lessors or their assigns to said lessee or its assigns, which said notice may be served by posting a copy or duplicate of the same at one of the most public places on said premises, or by delivering a copy or duplicate of said notice to said lessee, or its assigns. This lease of said premises, or any part thereof, is not to be assigned under penalty of forfeiture, without the written consent of said lessors or their assigns. The said lessee and all who may hold under it hereby engage to pay double rent for every day it or any one else in its name shall hold the said premises or any part thereof after the expiration of this lease, or after a forfeiture thereof. The said lessee or its assigns is under penalty of forfeiture bound to keep said premises free from any disorderly, bawdy or gambling establishments, dramshops, tippling shops, beer houses or other nuisances whatever, and in case of a forfeiture of this lease the said lessors or their assigns may forthwith take possession of the said premises with all the improvements thereon and shall be entitled to the same, any custom, usage or law to the contrary notwithstanding. But said lessee or its assigns may remove said improvements at any time within six months after a forfeiture of this lease, by paying all unpaid rent, taxes, etc., then due. In case of punctual payment of the rent and taxes aforesaid, the said lessee or its assigns, is authorized to remove all such improvements at the expiration of this lease or of any renewal term thereof, which it or any one who may claim under it may have erected on said premises during said term or terms. Provided, however, and it is distinctly understood and agreed, that the said lessee or its assigns, may at its option at any time during the continuance of this lease or any renewal term thereof, if it then and there has in all things complied with the conditions hereof, tear down, remove, reconstruct or otherwise

alter the improvements erected on said premises to such extent and in such manner as may be necessary for the convenience of its business, and it is further agreed by and between the said lessors and lessee that at the end of the term hereby created this lease may at the option of said lessee or its assigns, be renewed for a further term of five years, to commence on the first day of December, 1884, and to end on the first day of December, 1889, and in the event of a renewal as aforesaid, then at the expiration of said renewal term the said lease at the option of the said lessee or its assigns may by renewed for an additional term of five years, to commence on the first day of December, 1889, and to end on the first day of December, 1894, and in the event of a renewal for the term last aforesaid, the said lease may at the option of the said lessee or its assigns be renewed for an additional term of five years, to commence on the first day of December, 1894, and to end on the first day of December, 1899.    To warrant such renewals or either of them, the said lessee or its assigns shall give to the said lessors or their assigns, written notice of its or their intention to renew said lease three months prior to the end of the then existing term. The renewals of said lease or any one of them for the term aforesaid shall contain and be subject to all the covenants and stipulations contained in this original lease, except that the annual rent during each term shall be at the rate of six per centum per annum upon the ascertained value of said land, exclusive of the buildings and improvements thereon, to be agreed upon by the parties hereto or their assigns. Should the said parties fail to agree upon said valuation then they shall each select a respectable disinterested real estate owner in the city of St. Louis, to appraise said premises, and have him on the same on the first Monday preceding the first day of the next renewal term, at twelve o'clock m., and the two appraisers so chosen shall at once proceed to value and appraise the said premises and their valuation of said prem-

ises for fixing the rent thereof for the said renewal term. In the event the appraisers chosen, as aforesaid, fail to agree upon a valuation of said premises, they shall at once select a third person possessing the qualifications aforesaid, and the three shall without delay proceed to value and appraise the said premises and the said valuation or appraisement agreed upon by two of said appraisers shall be the valuation of said premises for fixing the rent thereof for said renewal term. If either of said parties, for any cause whatsoever, fail or neglect to select an appraiser and bring him to the premises, as aforesaid, at said designated time, then the other party may, at its option, elect that the rent shall be and remain the same as during the then existing term, or may forthwith select both of said appraisers of the qualifications aforesaid, who shall be first duly sworn to assess the value of said premises fairly and impartially, and shall then assess the value thereof and give a written memorandum of such assessment to the said party thus appointing them, and in case said appraisers fail to agree they shall in the manner aforesaid select a third appraiser of the qualifications aforesaid and proceed as above provided for in case of appraisers selected by the respective parties, and the appraisement made by the two appraisers appointed by either of the said parties as aforesaid, or by two of the three selected as last aforesaid, shall be the valuation or appraisement of said premises for fixing the rent thereof for the said renewal term, and their written memorandum of their appraisement signed by them shall be conclusive as to the value of said premises. In the event the lessors or their assigns fail or neglect to select an appraiser and bring him to the premises as aforesaid at said designated time, then the lessee or its assigns may at its option elect that the assessment of said premises for the purpose of general taxes for the then next preceding year shall be its value for the purpose of fixing the rent thereof as aforesaid, six per centum of the value of said premises

determined as aforesaid shall be the annual rent thereof for the ensuing renewal term, and shall be payable quarterly as provided for in the original lease."

Afterwards on the twentieth day of December, 1886, the said trustees by their deed of that date, and in execution of their trust, conveyed the premises to the children of the said George R. Taylor deceased, the beneficiaries of the trust, one of whom was the appellant, who thereby acquired title to the one undivided fourth, and the other children and their grantees title to the other undivided three-fourths of the land in fee, subject to the lease.

Afterwards on the twelfth day of January, 1888, the said Malleable Iron Company, having in the meantime erected the improvements in controversy on the leased land, conveyed the same with the improvements to John D. Filley, in trust to secure certain debts due the Third National Bank of St. Louis and others. Afterwards, on the tenth day of August, 1889, the said Filley in foreclosure of the deed of trust and in pursuance of the power vested in him as such trustee, conveyed the same to the said Third National Bank, and said bank, by mesne conveyances executed prior to the twelfth day of November, 1889, also acquired the title of all the children of said George R. Taylor, other than the appellant, and their grantees under the deed from Mellier and Maguire, trustees as aforesaid, to the premises.

Afterwards on the seventh day of March, 1890, the said bank by warranty deed of that date conveyed all its interest in the undivided three-fourths of the premises to the Stark Manufacturing Company, and on the twenty-fifth of July, 1890, the said manufacturing company by its deed of that date conveyed all its interest in the undivided three-fourths of the premises to the respondent, Turner T. Lewis, which title the said Lewis accepted and held in trust for himself and the other parties to this proceeding, other than the appellant,

in the proportions found by the court, when this suit was commenced on the twenty-fifth of April, 1895.

The oral evidence introduced by the respondent tended to prove the receipt of rent by appellant from respondent and their grantors for appellant's one-fourth interest in the premises at the rate of $14.05 per quarter, from sometime in the year 1889, up to and including the quarter ending December 1, 1894, the last payment of rental amounting to the sum of $112.40 for the period ending at that date having been made on the eighth of April, 1895, about which time there was also tendered appellant by the respondent Lewis, the amount of the instalments for the quarters ending March 1, and June 1, 1895, which were refused. That all the taxes on the premises were paid by the respondents and their grantors up to and including the year 1895. That these rentals were paid by the bank from sometime in 1889 until June 1, 1890, and thereafter by the respondent Lewis. That they were paid to the agents of the appellant and that Lewis had been in possession of the premises ever since he acquired title, renting the same to tenants.

In the course of the cross-examination by appellant's counsel of John Maguire, one of the trustees aforesaid, who was introduced by the respondents as a witness in their behalf, and who in the years 1889, 1890 and 1891, was acting as the agent of appellant in collecting his rents, it was assumed by appellant's counsel, and assented to by the witness, as a fact, that there had been a renewal of the lease by him and Mellier as trustees, and in the examination of appellant who was the only witness in his own behalf, he testified that he didn't know of any lease on these lots after the expiration of the renewal from Maguire and Mellier as trustees. That he had never authorized his agents to renew the lease, and that he first learned that Lewis and his associates claimed to have a leasehold interest in these lots when the partition suit was brought. That he had been a resident in the States

of California and Washington since the year 1886 until the year 1896, and that the rents for this property had been collected by his agents and remitted to him.

On this disclosure of facts the appellant contends that when the partition proceeding was instituted the term of the lease had expired and all the rights of the tenants under the lease to the improvements were gone, except as forming a part of the freehold to which they were attached and the appellant as owner of the undivided one-fourth of the fee was entitled to a like proportion of the improvements and that the court erred in not so holding, and in not making partition of the premises as though the other parties to the action had no leasehold interest therein, and no right to remove the improvements.

(1)    Next to the letting, the leading feature of the lease is to secure to the lessee title to, and the right to remove, the improvements that might be erected on the premises by the lessee or its assigns.    To secure to it the full enjoyment of this right, a short term of three years and four months was palpably inadequate.    Hence, at the option of the lessee a life for the lease commensurate with the right, of eighteen years and four months commencing on the first day of August, 1881, and ending on the first day of December, 1899, was provided for, and in case of forfeiture for default it was expressly provided that "said lessee or its assigns may remove said improvements at any time within six months after a forfeiture of this lease, by paying all unpaid rent, taxes, etc., then due" and "in case of punctual payment of the rent and taxes aforesaid, the said lessee or its assigns is authorized to remove all such improvements at the expiration of any renewal term thereof."    The lease then provided for a readjustment of the rental at stated periods, and for a five year renewal thereof at each of such periods during the life of the lease.    The right of the lessee to such renewal, however, was not made to rest upon a mere

covenant therefor in the lease, or the fact thereof made
dependent on the execution of a new lease, but the renewal
itself resulted *ex vi termini* from the exercise of the option
by the lessee and the assent of the lessor.   The only essential
to the exercise of the option, was the determination of the
amount of the rental to be paid during the period of. the
renewal, and the lease provided a method by which that
amount might be ascertained and determined, and when
thus determined, the same became payable according
to the terms of the lease and the lease was re-
newed for five years, whether the lessor assented
to the renewal or not.   In case the lessor and lessee
agreed upon the amount of the rental to be paid during
the period of renewal, there was, then, of course, no necessity
for resorting to that method for its ascertainment, but the
rental agreed upon became.payable as provided in the lease,
and the same renewed for five years. . In the latter case the
election of the lessee to renew, the assent of the lessor
thereto, and the agreement as to the amount of the rental,
effected the renewal.   That there was such a renewal from
the first day of December, 1894, while the trustees Mellier
and Maguire held the reversion, to the first day of Decem-
ber, 1889, and that the appellant had knowledge of that
renewal seems not to be disputed, and it would seem from the
amount of the receipts given for the quarterly rent in 1889
and subsequently, that in this renewal the rent was reduced
from $73.12 to $56.20 per quarter. That there was a second
renewal for the next ensuing five years ending on the first
day of December, 1894, so far as the appellant's interest in
the premises was concerned is simply shown by the election
of the lessee to continue in possession thereof, and the
receipt by the appellant (lessor) of the quarterly rent there-
for under the lease, as before, during the whole of that
period, under the well settled rule that when a tenant with
the consent of the landlord, express or implied, holds over his

term the law implies a continuation of the original tenancy upon the same terms, conditions and covenants as in the original lease. [12 Am. and Eng. Ency. of Law, 979; Quinette v. Carpenter, 35 Mo. 502; Finney v. St. Louis, 39 Mo. 178; Hunt v. Bailey, 39 Mo. 257; Thomas v. Zumbalen, 43 Mo. 471; Ins. Co. v. Bank, 71 Mo. 58.]

It is no answer to the necessary implication of a renewal from these facts, for the lessor to say that he never authorized his agents to renew the lease. So that, upon that day, the respondents were in the lawful possession of the premises under the lease with the right to remove the improvements, and although the time had then passed within which they could give the required notice, and coerce a renewal of the last five years of the lease according to the plan therein provided for the readjustment of the rental and the continuation of the lease at the new rate as a consequence of such readjustment, they continued in possession under the lease, until this proceeding for partition was instituted, on the twenty-fifth day of April, 1895, less than five months thereafter, having good reason to believe from the appellant's previous conduct in the matter that he would consent to the renewal, and without any intimation to the contrary, until his refusal about that time to accept the first quarterly instalments of the rent.

Under these circumstances it can not be doubted that the relation of landlord and tenant still continued to exist between these parties at the time the partition suit was begun and whether that tenancy be called a tenancy under the lease or a tenancy from year to year, from month to month, at will, or by sufferance, so long as it continued, and for a reasonable time thereafter, the respondents being in possession of the premises, had the right to remove their improvements. If under the lease, the right continued until December 1, 1899. If from year to year, month to month, at will or by sufferance, until terminated by the statutory notice, and as that

notice was never given; the right existed at the time the partition suit was brought. That was an appropriate proceeding for the assertion of that right, and considering the relations the parties sustained to each other as tenants in common of the fee, the only one, by which that right could be fully secured, and fairly severed from the fee, with due consideration for the rights of all the parties in interest. Hence we conclude the court committed no error in awarding the improvements to the respondents, and the judgment of the circuit court is affirmed.    All concur.