· ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1911.

(Continued from Volume 158)

PEOPLE'S BANK, Appellant, v. JOSEPH H. BENNETT, Respondent.

St. Louis Court of Appeals, July 15, 1911.

1. LANDLORD AND TENANT: Tenant Holding Over: New Term. Where a tenant for a fixed term with the privilege to continue under the same terms for another period remains in possession after the expiration of the original term, and pays the stipulated monthly rent, the relation of landlord and tenant continues for the new term, identically as before.

2. BANKS: Corporations: Powers of President. The president of a bank or other corporation has no implied power, as a matter of law, to either lease the corporation's real estate, cancel its outstanding leases thereof, or enter into new ones for it as lessee.

3. ———: Powers of Cashier. A cashier of a banking corporation, who takes an acknowledgment of a lease on property on which the bank has a lease, does not act for the bank, but only in his official capacity as notary; and in receiving a copy of the lease to be placed with the lessee's papers, prima facie he is · acting as a mere depositary, for the lessee's personal convenience.

4. ———: ———. A cashier of a bank is without implied authority, as a matter of law, to lease the bank's premises, to accept the surrender of a leasehold term or to lease premises of others for it, though he is the executive officer of the bank with reference to its business, such as deposits, discounts and exchange.

5. **LANDLORD AND TENANT: Conflicting Leases: Banks.** The president of a bank leased property owned by him, consisting of banking rooms and a hotel, to the bank for a specified term, with the privilege of renewal. The bank sublet the hotel to a third person for the same term, with the privilege of renewal. The bank renewed its lease, and the third person remained in possession after his term, and paid to the bank the prescribed monthly rent. Thereafter, the president executed to the third person a new lease of the entire premises, and arranged for free rent for the bank, by which arrangement the president gained a profit resulting from an increase of rent, and the third person thereupon refused to pay rent to the bank. In an action of unlawful detainer, brought by the bank against the third person, the court directed a verdict for defendant. *Held*, that the lease to defendant was not valid against the bank, unless it consented to a surrender of the premises and the new letting, and that it was a question for the jury, under the evidence, whether it had so consented.

6. ———: ———: ———: Estoppel. In such a case, where the third person expended money in improving the premises under the new lease, if the board of directors of the bank, officially, or a majority of them, personally, consented to the new lease, no doubt an estoppel would arise therefrom; but the facts relating to this matter not being developed, this question is not decided.

Appeal from Franklin Circuit Court.—*Hon. R. Steele Ryors*, Judge.

REVERSED AND REMANDED.

*James Booth, F. H. Farris* and *Bland, Crites & Murphy* for appellant.

(1) The payment by the defendant and the acceptance by plaintiff of the rent for the months of March, April, May and June, 1909, after the expiration of Bennett's original lease, containing the clause,

"with the privilege of renewal for five years," had the legal effect to renew the original lease for a term of five years, and to continue in force and effect all the provisions of said original lease. Insurance Co. v. Bank, 71 Mo. 58; Lewis v. Perry, 149 Mo. 257; Curtiss v. Sturgiss, 64 Mo. App. 538; Reno Co. v. Brecht, 109 Mo. App. 25; Myrterman v. English, 214 Pa. St. 325; Hays v. Goldman, 71 Ark. 251; Brown v. Samuels, 70 S. W. 1047; Harding v. Selee, 148 Pa. St. 20; Delashman v. Benny, 20 Mich. 292; Long v. Stafford, 103 N. Y. 17. (2) Dr. Lane in both the negotiations for and in the execution of the lease to Bennett, did not, if he could have done so, pretend to act for the bank, and a notice to any or all of the directors of the bank, as individuals, that such negotiations were in progress was not notice to the bank. Benton v. Bank, 122 Mo. 339. (3) The facts that defendant was a tenant of the plaintiff, that he had forfeited his lease for nonpayment of rent and had received notice to surrender the leased premises on account of such forfeiture are removed from the field of debate and the court should have peremptorily declared that under the law and the evidence the plaintiff was entitled to recover. Williams v. Williams, 132 Mo. App. 266; Coleman v. Reynolds, 207 Mo. 463; Warner v. Modern Woodmen, 119 Mo. App. 222; Cotton v. Houston, 110 Mo. App. 70; Bank v. Bank, 109 Mo. App. 665.

*Jesse H. Schaper* and *John W. Booth* for respondent.

(1) Even if the so-called lease be held to be a lease with a covenant for renewal, the renewal itself was a thing which could not be done by the lessee, and could only be done by the lessor. Blount v. Connolly, 110 Mo. App. 603; Diffenderfer v. School Board, 120 Mo. 447. Hence, from the expiration of the orig-

inal term, the plaintiff held under said Lane only as tenant at will. R. S. 1909, sec. 7883; Griffith v. Lewis, 17 Mo. App. 605; Hammon v. Douglas, 50 Mo. 442. (2) As a matter of general law Lane, as president of the plaintiff, was plaintiff's chief executive officer, and as such entitled to, without special authority from the board of directors, perform all acts of an ordinary nature, by usage or necessity, incident to his office, and to bind the bank by contracts in matters arising in the usual course of business. Roe v. Bank, 167 Mo. 406; Jones v. Williams, 139 Mo. 1; Stripling v. McGuire, 108 Mo. App. 594; Sparks v. Transportation Co., 104 Mo. 531. (3) On all the facts on the record defendant in his dealings aforesaid was entitled to rely upon and act in the belief that Lane on his part was acting by authority of the bank, and that he did so rely upon Lane having such authority is conclusively shown by the said dealings of defendant with said Lane. Jones v. Williams, 139 Mo. 1.

NORTONI, J.—This is a suit in unlawful detainer. At the conclusion of all the evidence, the court peremptorily instructed that plaintiff could not recover and from this judgment the appeal is prosecuted.

It appears that the property involved is owned by one Dr. A. Lane, and that he is president of plaintiff bank. Dr. Lane leased the entire property, consisting of a hotel building, and banking room therein, to plaintiff bank, and the bank re-let the hotel building to defendant, but afterward defendant negotiated a lease for the hotel building directly with Dr. Lane and now claims the right of possession under this subsequent lease. It appears that on February 10, 1904, Dr. A. Lane, owner of the premises, let the entire property, consisting of the hotel building, and banking room therein, to plaintiff bank for a period of five years, until February 10, 1909. The rent agreed upon

was twenty-five dollars per month for the entire prop-
erty.   It was stipulated in this lease that the bank
might continue to hold the premises for another like
term of five years at the same rental and under the
same terms and conditions as set forth in the original
lease, if it elected to do so.  Plaintiff bank occupied
one room of the building as its banking house, and more
than two years thereafter, on April 25, 1906, let all
the remainder of the premises to defendant for a
hotel.   Though this lease to defendant was executed
April 25, 1906, it created a term of three years, from
February 10th of that year, terminating on February
10, 1909, for which defendant agreed to pay plaintiff
bank a monthly rental of twenty-five dollars per
month in advance.   This lease stipulated, too, that
defendant might continue it under the same terms
and conditions and at the same rental for the same term,
if he chose to do so at its expiration.

     From what has been said, it appears that the
lease of plaintiff bank from Dr. Lane expired Feb-
ruary 10, 1909, with the privilege of renewal, and
the lease of defendant from plaintiff bank expired
on the same day, with a like privilege.   Two days
before the bank's lease with Dr. Lane expired, that
is on February 8, 1909, it renewed the same for a
new period of five years, commencing on February
10, 1909, and ending February 10, 1914.   Though
defendant's lease with the bank of that portion of
the building which he occupied as a hotel expired on
the same day, he negotiated no new contract of lease
thereof but continued in possession of the premises,
as before, under his lease which stipulated that he
might do so, if he chose, on like terms as those con-
tained in the original lease.   Defendant paid plaintiff
bank the rent falling due on the first day of the months
of  March, April, May and June after the lease ex-
pired, but defaulted or refused to pay rent to the bank
July 1st.   Defendant refused to pay further rent to

the bank, because, as he says, he had rented the premises from Dr. Lane, the owner, for a period of ten years, from July 1, 1909, to June 30, 1919, at forty dollars per month for the term of ten years. The facts touching this matter are about as follows: Defendant and Dr. Lane negotiated for several weeks about the lease of the premises and it appears several of the directors of the plaintiff bank knew that such negotiations were pending but did not consent thereto. Finally, on June 23d, Dr. Lane and defendant entered into a written lease, whereby Dr. Lane, as owner of the premises and not as president of plaintiff bank, let to defendant the entire property, including the banking house quarters, for the term of ten years, as above suggested, at a stipulated rental of forty dollars per month. As a part of this arrangement, defendant executed and delivered to Dr. Lane a writing which recites that, in consideration of one dollar to him paid, he let to plaintiff bank, free of further rent or charges therefor, the room occupied by it, for a period ending on the 10th day of February, 1914— that is, the same date on which the bank's new lease with Dr. Lane terminated. This memorandum also provided that at the expiration of that period (February 10, 1914), defendant would rent to plaintiff bank the same room for the remainder of this term— that is, until July 1, 1919, at such rental as the parties should agree upon, and, if no agreement could be made between them, such as might be agreed upon by a board of arbitrators selected for the purpose. The lease so made from Dr. Lane, the owner, to defendant, of date June 23, 1909, was acknowledged before Mr. Glassey, the cashier of plaintiff bank, who was likewise a notary public, and it appears that Dr. Lane, the president of the bank, signed, as a witness, the agreement by which defendant authorized the bank to occupy the premises until February 10, 1910, free of rent. At the same time, and simul-

taneously with the execution of these papers, Dr. Lane executed a written order, directed to defendant, by which he appointed plaintiff bank as his agent to collect the rent of the premises for him under the new lease above mentioned. This paper was witnessed by J. A. Glassey, the cashier of the bank, who signed his name thereto as a witness, but Glassey says that he did not know the matter involved a lease of the property until after he had taken the acknowledgment and received Dr. Lane's copy of the lease to deposit with Lane's private papers in the bank. Dr. Lane delivered his copy of the lease to Glassey, the cashier, to be placed with his papers, but the bank repudiated the transaction throughout immediately and asserted its rights to the premises under the lease renewed on February 8, 1909, for a term of five years, from February 10th of that year to February 10, 1914. Though it appears some of the directors of the bank knew that negotiations were pending between Dr. Lane, the owner of the property, and defendant about a lease, it is not shown that any of them consented thereto. Indeed, it affirmatively appears from the testimony of defendant, as well as from Dr. Lane himself and the cashier of the bank, Mr. Glassey, that shortly prior to June 23d, when the lease was consummated, Mr. Glassey, the cashier of the bank, informed Dr. Lane and defendant that he would not consent to a letting of the property to defendant by Dr. Lane, as it was a matter about which he was without authority and pertaining to which the board of directors alone could act. As to this, it appears Dr. Lane and defendant called at the bank to discuss with Glassey, the cashier, the matter of the proposed lease between Dr. Lane and defendant. Upon informing Mr. Glassey thereabout and requesting his consent, he refused it point blank, saying that is a matter for the board of directors. Notwithstanding this warning, Dr. Lane proceeded to execute a lease with

defendant as above stated and defendant relies thereon for his right of possession against the bank. The lease which defendant originally entered into with the bank stipulates for the payment of a monthly rental to the bank of twenty-five dollars per month, on the first day of each month, and provides further that, in the event defendant should default in any installment of rent for thirty days after the same is due, the lease shall terminate and he will, on demand, reinstate plaintiff in the peaceable possession of the premises. Defendant having defaulted in the payment of rent due to plaintiff under its lease, on July 1, 1909, plaintiff thereafter demanded possession and served a written notice on defendant to that effect, on August 10, 1909. As defendant continued in his refusal to either pay plaintiff rent or give possession of the premises, this suit in unlawful detainer was instituted on August 21st of the same year.

There can be no doubt that plaintiff bank leased the premises from Dr. Lane on February 10, 1904, for a period of five years, with the privilege of renewal for a like term. It is conceded, too, throughout the case that the bank renewed this lease for the entire premises on February 8, 1909, for a period of five years from February 10, terminating on February 10, 1914. So much is beyond question in the case; and it is conceded, too, that defendant became a tenant of so much of the building as was occupied by the hotel for a term of three years, commencing February 10, 1906, and ending February 10, 1909. This lease stipulated that defendant might continue the tenancy, under the identical terms as provided therein, for a new period of three years from February 10, 1909, if he chose to do so. On the original lease expiring, February 10, 1909, defendant continued in possession of the premises, paying rent to plaintiff bank as before. On the first days of March, April, May, and June, he paid to plaintiff the installments

of twenty-five dollars each, as originally stipulated in the lease. No negotiations for a new lease were pending between the parties at the time the old one expired, and by continuing in possession of the premises, under the circumstances stated, the relation of landlord and tenant between plaintiff and defendant continued identically as before, for a new term of three years, terminating on the 10th day of February, 1912. [See Lewis v. Perry, 149 Mo. 257, 50 S. W. 821; Ins. Co. v. National Bank, 71 Mo. 58; Leggett v. Louisiana Purchase Exposition Co., 157 Mo. App. 108, 137 S. W. 893.] It therefore appears affirmatively, and beyond the pale of controversy, that defendant was tenant of plaintiff bank at the time Dr. Lane, the owner of the building (who is likewise president of the bank), negotiated a lease to him for ten years, from July 1, 1909, to July 1, 1919.

By instructing a verdict for defendant as a matter of law, the court essentially assumed that the conduct of Dr. Lane, who was president of the bank, in executing a lease of the premises, as owner thereof, to defendant and the conduct of Mr. Glassey, the cashier, in taking the acknowledgment of the parties to such lease, as notary public, and receiving Dr. Lane's copy of the lease to be placed with his private papers in the bank operated a surrender of the bank's leasehold estate and the creation of a new term, whereby the bank became tenant of defendant from July 1, 1909, to July 1, 1914. It is clear that no such result may be declared as a matter of law on these facts, unless Dr. Lane as president of the bank possessed the implied power, without express authority from the board of directors, to cancel the bank's lease with him and enter into a new one for it, whereby the bank was made tenant of defendant instead of defendant remaining tenant of the bank, and this, too, in a case where Lane was known to be dealing, as owner of the property, for himself, on his own ac-

count and for a profit to him. By the new arrangement, Lane would receive forty dollars per month for the building, while, under the lease with the bank, he received but twenty-five dollars. Though the president of a bank or other corporation may perform the duties incident to the trust reposed in him, including such as custom or necessity has imposed upon his office, without express authority, he is without implied power, as a matter of law, to either lease the corporation's real estate or cancel leases it has outstanding with respect thereto or enter into new ones for it as lessee. [See Koch v. National, etc. Bldg. Assn., 35 Ill. App. 465; s. c., 137 Ill. 497; 2 Thompson on Corporations (2 Ed), sec. 1470.] As to the conduct of Mr. Glassey, the cashier, in taking the acknowledgments of the parties as notary public to the new lease and receiving a copy to be placed with Dr. Lane's papers in the bank, it should be said that he in no sense acted for the bank in taking the acknowledgment but only in his official capacity as notary, and in receiving the papers he acted prima facie as a mere depositary for Dr. Lane's personal convenience. Though the cashier is regarded, in a manner, as the executive officer of a bank, this pertains only to the current business of such institutions with respect to their financial affairs, such as deposits, discounts, exchange, etc. The cashier, of course, is without implied authority, as a matter of law, to either lease the bank's premises, accept the surrender of a leasehold term or lease premises of others for it. [2 Thompson on Corporations (2 Ed.), sec. 1526.] Furthermore, nothing in evidence suggests that the cashier was acting for the bank in this case, and it does appear that he had, only a short time before, informed both defendant and Dr. Lane that the board of directors alone could authorize the transaction they sought to consummate. But aside from all of this, the fact remains that the transaction of the new lease had with Dr. Lane was with him as

owner of the premises and for his private benefit instead of as president of the bank, for while he arranged for free rent to the bank for five years, he appropriated to himself a profit of fifteen dollars per month in the transaction and sought to impair the bank's reversion of two years of the term after defendant's lease with it expired. Defendant knew he was dealing with Dr. Lane as owner of the property and not as president of the bank in consummating the lease referred to, and, in view of this fact, it is obvious that the law will not conclude a transaction between them as beyond repudiation on the part of the bank, when it appears Dr. Lane, who occupied a position of trust, realized a profit for himself.

The court should have referred the matter to the jury for inquiry as to whether or not the bank intended and consented to a surrender of the premises and the new letting. It appears defendant expended some money in improving the premises under the new lease with Dr. Lane. In view of this fact, if it appears on the trial that the board of directors of the bank officially, or a majority of them personally, consented to the new lease by Lane to defendant, no doubt an estoppel may be invoked therefrom in aid of defendant's cause. The facts on this matter are not developed and the question is not decided.

The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds*, *P. J.*, and *Caulfield*, *J.*, concur.