MARTHA F. STEWART v. ROLLIN C. SPRAGUE AND SAMUEL W. GILLIS.

[See 71 Mich ——.]

*Landlord and tenant—Lease—Surrender—Eviction.*

The former opinion is held to have been properly taken by the trial court as the law of the case, and the judgment is affirmed.

Error to Wayne. (Gartner, J.) Argued June 19, 1889. Decided July 11, 1889.

Debt. Defendants bring error. Affirmed. The facts are stated in the opinion, and in the one filed on the former hearing.

*William J. Gray,* for appellant Sprague.

*Dickinson & Thurber,* for appellant Gillis.

*James H. Pound,* for plaintiff.

MORSE, J. When this case was here before we said:

" The uncontradicted testimony in the case shows conclusively that there was neither an eviction nor an unconditional surrender. The defendants were in possession, by themselves and their assignees, to November 1, 1877, when the building was voluntarily abandoned and surrendered by them and their assignees. The plaintiff made no agreement to receive the building from them, and release them from

their obligation on the lease; and no claim of this kind is made, except from their claim that they have no notice that the plaintiff intended to hold them for the rent. As we have before stated, the leasing to Fales & Co. was for the benefit of the defendants themselves, and it did not amount, in law, to a release of the plaintiff's claim against them." See *Stewart v. Sprague*, 71 Mich.——(38 N. W. Rep. 673).

Upon a second trial, now brought here for review, the circuit judge, under the impression that the evidence was substantially the same as at the first trial, directed a verdict for the plaintiff in the sum of $2,396.

We do not consider it necessary to set out the facts in the case, or the points of controversy between the parties, as a full statement will be found in our opinion reported as above noted.

It is claimed by the counsel for the defendants that the present record contains new and important evidence, given by Mr. Henry A. Harmon, directly contradicting plaintiff's main witness as to the circumstances under which the keys were delivered to, and accepted by, the plaintiff's son and agent, S. W. Stewart.

Mr. Harmon was not a witness on the first trial, and his testimony, given for the first time on the last trial, it is claimed, shows that S. W. Stewart accepted the keys of the store, Harmon then holding possession as assignee in bankruptcy of the defendants, with the sole and only condition that it should not prejudice plaintiff's claim against the bankrupts' estate, and that nothing was said as to any claim against the defendants personally.

We have carefully examined the testimony of Mr. Harmon, and can find nothing therein to change the situation or the rights of the parties as shown by the first trial. Mr. Harmon, it will be remembered, represented the defendants as their assignee upon their voluntary petition in bankruptcy. He testifies that he did not act for them, or either of them, except as the assignee in bankruptcy appointed by the court.

He paid rent under the lease, and by its terms, during his occupancy of the building.

He says that he wanted to turn over the keys of the store in order that the estate might escape the liability for the rent.

"Mr. Stewart claimed that he could hold the estate for the balance of the term, or, if he re-rented it, could hold the estate for any deficiency that might arise. I claimed he had no such right, and that he had no claim provable against the estate in bankruptcy. I surrendered the keys, and he accepted them with the understanding that whatever right of this sort he did have should not be prejudiced by his action in receiving the keys.

"Q. That is, any claim that he had against the estate should not be prejudiced?

"A. Any claim that he had against the estate. If he had any right to prove any claim, the acceptance of the keys should not prejudice that right.

"Q. Was there any understanding or agreement on your part that his acceptance of the keys should not prejudice any rights he might have against the bankrupts personally, or either of them?

'A. I have no recollection about anything being said about claims against the bankrupts personally. Certainly there was no agreement about it.

"Q. You never agreed, then, that his acceptance of the keys should not prejudice any rights he might have against the bankrupts personally?

"A. No; I never made any such agreement, certainly."

On cross-examination he testified that he was not the agent of the defendants personally, and had nothing to do with or for them except in his official relation as assignee in bankruptcy.

"Q. And you went to Mr. Stewart, and tendered back the key, and Mr. Stewart declined to accept it, or demurred or objected to accepting or doing anything that would in anywise impair any of his rights; and, so far as you were concerned, speaking for the estate, as I understand you, you said that that should not in anywise prejudice him as to that?

"A. Well, that is substantially as I understand the facts to be, although a little broader than my recollection of his claim to me was.

"*Q.* You say, as I understood you, the matter as to the liability of Messrs. Gillis & Sprague to him was not broached either by him or by you to him?

"*A.* That is my recollection of the transaction.

"*Q.* You yourself did not obtain possession from Gillis & Sprague?

"*A.* I did not.

"*Q.* You obtained possession, did you not, through Francis G. Russell, who was the common-law assignee preceding you?

"*A.* That is the fact.

"*Q.* And he had been, so far as you ascertained, in actual possession under his common-law assignment, for a short period?

"*A.* I so understood it."

The purport of Harmon's testimony is that he was anxious to surrender the keys that the estate might escape liability, and that Stewart would not receive them except on condition that he waived none of his rights, as far as the estate of the bankrupts was concerned, and he agreed that this should be the condition of the acceptance of them. He had no right to make any further agreement, and does not recollect that any further condition was required.

As we said when the case was here before:

"The record does not show, and it is not claimed, that the plaintiff ever accepted either Russell or Harmon as tenants, and agreed to release the defendants from the covenants of their lease. While Russell and Harmon paid some rent to the plaintiff, they did it as their assignees, and the defendants still remained liable for the amount. When Harmon finally abandoned the building, it was for the benefit of the lessees that the plaintiff re-rented the premises to Fales & Co., and this act did not release the defendants from the payment of any deficiency that might arise."

It will be seen that there was no agreement that the lease should be surrendered, and the defendants' counsel admit that it could not be surrendered without a mutual agreement.

But they claim that the question whether or not there was an eviction should have been submitted to the jury.

As far as an eviction is concerned, the testimony of Mr. Harmon has no tendency to show one; and it is not claimed that, outside of Harmon's evidence, the record is substantially different from what it was when first before us.

The argument of defendants' counsel that the action of plaintiff in receiving the keys, and afterwards re-renting the store to Fales & Co., was an eviction, is but a repetition of the argument made when the case was first here.

We think our former opinion disposes of it, and see no reason now for changing our views as then expressed.

The court was right in taking our former ruling as the law of the case, and the judgment will be affirmed.

The other Justices concurred.