# GERHART REALTY COMPANY, Respondent, v. BRECHT, Appellant.

**St. Louis Court of Appeals, December 13, 1904.**

1. **LANDLORD AND TENANT: Holding Over: Renewal of Lease.** Where a written demise of premises provides for an extension of the term without prior written notice to the lessor from the lessee, a holding over is taken to be an election to renew in pursuance of the provision.

2. ———: ———: ———: **Notice: Waiver.** And where the instrument provides for a written notice from the lessee to the lessor of an intention to renew, such a provision is for the benefit of the lessor and may be waived by him.

3. ———: ———: ———. But where such notice is provided for, the intention of the tenant to claim the extended term must be shown by giving notice or the intention must be otherwise manifested; it can not be inferred from the mere holding over.

4. ———: ———: **Election to Renew.** Where the tenant under a lease, with a provision for renewal by giving notice, failed to give notice, but held over and paid the rent provided for in case of renewal, on the demand of the lessor, and with notice that he would be held to the terms of the renewal, it was a question of fact, for the circuit judge as trier of the fact, whether the tenant elected to renew.

5. ———: ———: **Surrender: Accepting Possession.** Where a tenant under a written lease with a provision for renewal by giving notice, held over without such notice and was notified by the landlord that he would be held to the terms of the renewal and paid rent in accordance with such terms, but afterwards abandoned the premises, and the landlord accepted the keys under protest and with notice to the tenant that he would hold him for possible loss of rent, these facts were sufficient to support a finding of the trial court that there was no acceptance of the surrender.

Appeal from St. Louis City Circuit Court.—*Hon. James R. Kinealy,* Judge.

AFFIRMED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.,* for appellant.

(1)   No notice of his intention to claim a renewal of the lease in question having been given by the defendant to the plaintiff, the renewal did not take effect, notwithstanding defendant remained in possession.   Beller v. Robinson, 50 Mich. 264; Cooper v. Joy, 105 Mich. 375; Bradford v. Patton, 108 Mass. 153.   A covenant to renew does not give the tenant the right to retain possession after the end of the original term. Finney v. Cist, 34 Mo. 303.   (2)   The quitting of the premises by defendant and the lease of the same thereafter by plaintiff to Cavanaugh for a term beyond that which defendant was bound to keep them, had he availed himself of his right to renew the lease, constituted an eviction of the defendant by plaintiff and operated as a surrender of the premises by operation of law, which discharged defendant entirely on his covenant to pay rent, if any such covenant was then in force.   Huling v. Roll, 43 Mo. App. 234; Matthews v. Tobbener, 39 Mo. 115; Hudson v. Jones, 79 Mo. 496; Holmes v. Guion, 44 Mo. 164; Duffy v. Day, 42 Mo. App. 638; Churchill v. Lammars, 60 Mo. App. 234; Robertson v. Winslow, 99 Mo. App. 546, 74 S. W. 442; Clemens v. Bloomfield, 19 Mo. 118; Koenig v. Brewery Co., 38 Mo. App. 18; Squire v. Brewery Co., 90 Mo. App. 462.

*Charles R. Macfarlane* for respondent.

(1)   Holding over by lessee operates as an election to extend the term.   18 Am. & Eng. Ency. of Law (2 Ed.), p. 690, citing Montgomery v. Hamilton Co., 76 Ind. 362; Bright v. McQuat, 40 Ind. 521; Hoiley v. Young, 66 Maine 520; Blumenberg v. Myres, 32 Cal. 93; Stone v. St. Louis Stamping Co., 155 Mass. 267; Kramer v. Cook, 7 Gray (Mass.) 550; Delashman v. Berry, 20 Mich. 292; Schroeder v. Gemeinder, 10 Nev.

355; Clarke v. Merrill, 51 New H. 415; Mershon v. Williams, 62 N. J. L. 779; Crouch v. Trimby Shoe Co., 83 Hun (N. Y.) 276; Clendenning v. Lindner, (N. Y. Super. Ct. Gen. T.) 9 Misc. 682; Voege v. Ronalds, 83 Hun 114; McBrier v. Marshall, 126 Pa. St. 390; Harding v. Seeley, 148 Pa. St. 20; Bateman v. Maddox, 86 Texas 546. In Missouri it is well-settled law. Ins. Co. v. Banks, 71 Mo. 58; Curtis v. Sturgis, 64 Mo. App. 535; Lewis v. Perry, 149 Mo. 256, 50 S. W. 821. (2) Lessee should have surrendered possession of the premises, in order to escape damages. Ins. Co. v. Bank, 71 Mo. 58. (3) Plaintiff did not release defendant from defendant's obligation to pay damages resulting from breach of the lease. Prentice v. Warne, 10 Mo. 601; Goodfellow v. Noble, 25 Mo. 60; Livermore v. Eddy's Admr., 33 Mo. 546; Huling v. Roll, 43 Mo. App. 234.

GOODE, J.—This is an action on a contract for the letting of a dwelling-house in the city of St. Louis. The house was let by written contract May 6, 1902, for the term of one year ending May 31, 1903, at a rental of forty dollars a month. The lease contained this clause: "The privilege is hereby given said lessee (Brecht) to renew this lease for an additional term of two years from expiration at the rate of $600 per annum or $50 per month, subject to the same covenants and conditions as herein contained, provided said lessee fulfills all conditions and stipulations herein promptly and satisfactorily, and shall have given thirty days' notice in advance before the expiration of this lease of his intention to renew the same." Brecht occupied the premises under that arrangement for the year called for and remained in possession during the months of June and July, 1903; that is, two months after the original lease had expired. He gave no written notice of an intention to renew it. On June 13th, he paid $40 for that month; but one of the re-

spondent's officers called him by telephone demanding ten dollars more and telling him that under the contract the rent was fifty dollars per month after June 1st. Brecht said he declined to pay the ten dollars at first, but when threatened with a suit did pay it. This payment was made June 27th. Three days later, on June 30th, he wrote the respondent's agent that he would vacate the premises in thirty days. The agent replied the next day, refusing to accept the notice, protesting it was in violation of the renewal privilege of June 1st, 1903, at $50 per month, declaring Brecht had elected to avail himself of the renewal privilege by holding over, that respondent refused to terminate the estate and if Brecht vacated the premises it would hold him for breach of contract. Brecht afterwards paid $50 for the month of July and about the last of that month sent the house keys to the respondent. Respondent or its agent, wrote him at once that the keys had been received under protest and respondent would look to him for any loss of rent resulting from his abandonment of the premises. Thereupon the respondent hunted for a new tenant at $50 a month and made repairs while the house was vacant. On August 15th it was leased to a new tenant at $45 a month, the best price respondent could get. This entailed a loss of five dollars a month during the remaining twenty-two months of the two years' renewal, or $110, and the present action on the contract is to recover that sum.

No declarations of law were asked by the respondent. The appellant asked a peremptory declaration in its favor and also this one:

"If from the evidence the court believes that after the defendant moved from the premises in question and tendered the keys thereof to the plaintiff, the plaintiff on the fifteenth day of August, 1903, rented said premises to another tenant for a period of two years from that date, and put said tenant in possession of said premises and collected rent from him, then the

plaintiff is not entitled to recover and the finding must be for the defendant.''

Both declarations were refused and judgment was entered against the appellant.

The first proposition advanced is that as Brecht did not give notice thirty days prior to the expiration of the original lease of an intention to renew it pursuant to the privilege accorded him, no renewal took place by his holding over, but only a month to month tenancy followed. If a written demise provides for a renewal or extension of the term without prior written notice to the lessor from the lessee, a holding over by the latter is referred to the provision relating to a renewal and taken to be an election to renew pursuant to the privilege accorded. Ins. & Law Building Co. v. Bank, 5 Mo. App. 333, s. c., 71 Mo. 257; Curtis v. Sturgis, 64 Mo. App. 535; Lewis v. Perry, 149 Mo. 257, 50 S. W. 821; Clark v. Merrill, 51 N. H. 415; Cramer v. Cook, 7 Gray 550. As the renewal is for the term and according to the conditions provided in the original agreement, the subsequent tenancy is not one from month to month as, if there were no privilege of renewal, it would be by force of the statute. R. S. 1899, sec. 4110; Griffith v. Lewis, 17 Mo. App. 605. It is said by text-writers that when a renewal occurs by holding over, the result ensues from the wrongful act of the tenant in failing to surrender or vacate the premises; is inferred from that act. So far as this rule applies, the intention of the tenant in holding over is eliminated as one factor determinative of the question whether the term was renewed. But the rule applies, as we understand, only to those instances, where the renewal is by operation of law from a holding over when no renewal is specially provided for, and not by virtue of a stipulation in a lease; for instance, if a tenant for years of lands should hold over after the expiration of his written lease, he would be a tenant from year to year by operation of law. In such instances the elec-

tion or option is with the landlord to treat the holding-over tenant as a trespasser or as in for a renewal term. 1 McAdam, Landlord and Tenant, p. 83; 1 Taylor, Landlord and Tenant (1 Ed.), sec. 92. But if the privilege to renew is given to the tenant by a written contract, the tenant must exercise an election; and whether he did or not may be a question of law or fact, according to the certainty or uncertainty of the proof. If the very method prescribed for electing to renew is pursued by the tenant a renewal occurs as the legal result. If that method was not followed, something else may have been done sufficient to show the tenant elected to renew. What is relied on in the present case to demonstrate that the trial judge erred in finding Brecht renewed his term, is his omission to give notice of a renewal. This is a very significant circumstance, but not necessarily decisive; for the stipulation in a lease for written notice of an intention to renew, is intended for the benefit of the lessor and can be waived by him. It was waived by the present lessor, the respondent. Instead of the respondent insisting on a written notice, its agent informed Brecht that the lease was regarded as renewed by Brecht's remaining in possession of the premises. That such a provision is for the benefit of the lessor and may be waived is the general rule. Stone v. Stamping Co., 155 Mass. 2577; McClelland v. Rush, 150 Pa. St. 57; Crouch v. Trimby, 83 Hun 276. There are cases in which it was held that the failure of the tenant to give notice when a written notice was required, prevented a renewal. Beller v. Robinson, 50 Mich. 254; Cooper v. Joy, 105 Mich. 374; Bradford v. Patton, 108 Mass. 153. Of course, if a notice is called for, it becomes a condition precedent thus far; if no notice is given, no renewal takes place if the landlord chooses to stand on his right to be notified. But we are concerned with the obligation of the tenant, the landlord having waived his right to notice. The essential point in such an inquiry is as to whether the tenant

elected to renew the term; what was his intention? Now the facts of a case may be such that it becomes apparent from the tenant's failure to give notice of renewal that he elected not to renew. Thus it was in Cooper v. Joy, supra. On the other hand, the facts may be such that though no notice was given, it is apparent the tenant elected to renew. This was true in the case of Stone v. Stamping Co., supra. Or a third predicament is possible, in which the facts are so uncertain as to make it a question for the triers of the facts whether the tenant elected to renew or not. Such was the situation in McClelland v. Rush, supra. In one case cited by appellant's counsel the renewal was held not to have occurred because the statute of frauds stood in the way. Beller v. Robinson, supra. We are confronted with no such difficulty. The general principle underlying the decisions is very well stated in Cooper v. Joy, supra, wherein it was said the rule is well settled that if notice is required of the lessee's intention to claim the extended term, the notice must be given *or the intention otherwise manifested;* and that a naked holding over is insufficient to warrant a finding that the lease has been extended. This is the doctrine, too, of Bradford v. Patton, supra. As Brecht failed to give notice of an intention to renew, the natural result of his retention of possession, without more, would be that he held as tenant from month to month like any other tenant who continues to occupy premises after the termination of a written demise. Griffith v. Lewis, supra. The precise inquiry then is as to whether there was any evidence in the case on which the circuit judge, as trier of the facts, might find that Brecht elected to renew the term. Brecht's counsel says there is none. But we have the significant fact that Brecht paid $50 for the month of June, first paying $40 and afterwards when respondent's agent claimed ten dollars more as due under the lease, paying that sum too. As obviating the effect of this circumstance, we are pointed to Brecht's

statement that he paid the additional ten dollars under threat of suit and after he had consulted with his attorney, who told him to pay it and that he would occupy the premises from month to month. The upshot of Brecht's testimony is that he did not pay the $50 for June and July pursuant to the terms of his renewal privilege, but simply to avoid litigation and as a monthly occupant of the premises. This would be a good answer to the argument that the payment of the $50 a month, which was to be the rent under the new term, tended to show Brecht elected to renew, if the testimony stood undisputed. But Frank Gerhart, with whom the business was transacted, testified that when the $40 was remitted he had a telephone conversation with Brecht to the effect that the rent on and after June 1st would be $50 a month under the privilege in the lease; that Brecht asked if respondent was going to charge $50 and Gerhart replied that it was, as the lease provided for it; whereupon Brecht said he would send the ten dollars and he did so at once; neither protesting against the assertion of Gerhart that the lease had been renewed nor stating that he remained as a month to month tenant. It was three days later when Brecht gave notice that he would vacate the premises. The sum of the evidence in this connection is that Brecht testified to paying the additional ten dollars under protest and Gerhart that he paid it simply on a statement that it was due according to the renewal privilege. A conflict of evidence was presented which the court, sitting as a jury, had to consider. If Gerhart's testimony was true, there was evidence of an election by Brecht to renew. This inference strikes us as improbable and not the one justified by the weight of the evidence; but we are not prepared to say there was no evidence on which the court below might rest its finding. If the appellant had asked a hypothetical declaration, stating the facts which, if found to be true, would lead to the conclusion that the lease was not re-

newed, and the declaration had been refused, error would appear. But the only declaration bearing on the point was a peremptory one in appellant's favor, which was equivalent to saying that, so far as the proposition under advisement is concerned, there was no evidence to show the lease was renewed. This declaration was properly refused.

The second proposition relied on is, that by accepting the keys and subsequently renting the premises, respondent released Brecht from all liability on his contract for rent, even granting the lease was renewed. The substance of this matter is, was there or not a surrender of the premises by Brecht? A surrender results from an express contract between the parties or from the law implying a surrender because of the acts of the parties; that is, a surrender may occur by operation of law. There is little, if any, evidence in this case tending to show a surrender occurred either by an express or an implied agreement. What does appear is that Brecht abandoned the premises instead of surrendering them. The circumstances relied on to establish a surrender by operation of law are that Brecht sent the keys to the respondent, which retained them and subsequently repaired the house and rented it to another tenant. These facts would be more significant, and might be conclusive in favor of a surrender, if they had transpired at the end of Brecht's term, or if they had been acquiesced in by the respondent without remonstrance. But if there was a renewal of the term, as the court found, the assent of the respondent as lessor to the surrender and an agreement, express or tacit, to release Brecht from further obligation to pay rent, was necessary. Churchill v. Lammers, 60 Mo. App. 244; Huling v. Roll, 43 Mo. App. 234. The cases cited by appellant's counsel, wherein a surrender was taken to have occurred from the return of the keys by tenants and subsequent relettings by the landlords,

proceeded on the theory that the latter had assented to the tenants vacating the premises. Now, instead of the respondent doing anything of the sort, it had notified Brecht in advance that he would be treated as bound for the full term of the renewal, and notified him when it received the keys that it did so under protest and would hold him responsible for a possible loss of rent. If respondent chose not to accept a surrender and re-lease Brecht, it had the right, nevertheless, to relet the premises after he had abandoned them. It owed him that duty, morally if not legally, in order to reduce the damages he would have to pay. To hold a tenant who abandons his term responsible for the loss of rent thereby entailed, a landlord is not bound to let the premises remain idle during the remainder of the term. The tenant is acquitted of liability only when the lessor accepts the surrender; that is to say, cancels the term. Livermore v. Eddy, 33 Mo. 547. As said, this need not be done formally. The facts may raise the implication of a surrender. Certainly the facts in the case at bar do not make such a conclusion irresistible, and the only instruction asked by the appellant on the point was of an unqualified character; in substance, that sending the keys of the respondent and the subseqent letting of the premises, exonerated Brecht from future liability. At the utmost there could only be room for a findin that the respondent released Brecht.

The judgment is affirmed. All concur.