## R. W. HIGGINS v. J. G. STREET.

(Filed September 4, 1907.)

(92 Pac. 153.)

**LANDLORD AND TENANT—Breach of Lease—Abandonment— Remedies of Landlord.** If a tenant wrongfully abandons leased premises before the expiration of the term, the landlord may, at his election, at once enter and terminate the contract and recover the rent due up to the time of abandonment, or he may suffer the premises to remain vacant and sue on the contract for the entire rent, or he may give notice to the tenant of his refusal to accept a surrender, when such notice can be given, and sublet the premises for the unexpired term for the benefit of the lessee to reduce his damages.

(Syllabus by the Court.)

*Error from the Probate Court of Oklahoma County; before Wm. P. Harper, Probate Judge.*

Affirmed.

*M. Fulton* and *J. S. Jenkins,* for plaintiff in error.

*Shartel, Keaton & Wells,* for defendant in error.

STATEMENT OF CASE.

The defendant in error, Street, leased the Alamo Hotel in Oklahoma City, by written lease for a term of one year at a rental of $200 per month to the plaintiff in error, Higgins, and his associates. Higgins, with the consent of Street, sublet the hotel to Mrs. Tedford, who occupied it for a few months and paid the rent to Street, except $50 which was paid by Higgins at one time when she was in default. Street consented to the subletting, but refused to accept Mrs. Tedford as his tenant or to release Higgins from payment of the rent. When Mrs. Tedford paid him rent, he receipted Higgins for the rent and gave him credit for it. Mrs. Tedford vacated the hotel before the lease expired, and notified both Street and the agent of Higgins that she had vacated the property. Higgins was in California and had left his business in the hands of his attorney, M. M. Fulton, of Oklahoma City.

Mrs. Tedford notified Fulton when she left the building, and Street notified Fulton that he would hold Higgins for the rent. Higgins was notified by Fulton, but took no action in the matter. Street then took possession, made some necessary repairs, and leased the hotel on account of Higgins for $125 per month and gave him credit for this amount each month during the unexpired term.

This action is by Street to recover from Higgins on the original lease the rent for the time the building was unoccupied after Mrs. Tedford vacated it and the difference between the amount Higgins agreed to pay and the amount received from the last lessee for the unexpired term of Higgins' lease, together with some expenses incurred in repairs and in reletting the premises. Issues were formed, and the case tried to a jury, and verdict returned in favor of Street for the amount claimed by him. Judgment was rendered on the verdict, and, after motion for new trial was overruled and exceptions saved, Higgins appeals to this court.

Opinion of the court by

BURFORD, C. J.: The question of law involved is whether the action of Higgins, after the property was vacated by his subtenant, amounted to an abandonment of the lease, and the action of Street, in repairing and reletting the property to another tenant, constituted either an eviction or an acceptance of the surrender of the lease. Higgins makes both contentions: first, that the lease was surrendered at the time Street consented to the subletting to Mrs. Tedford; and, second, if the lease was not surrendered, that the action of Street in taking possession and subleasing the property constitutes an eviction—in either of which cases he would not be liable for rents after the happening of such event. These questions both depend upon the particular facts in the case. Where a tenant abandons the premises, the landlord may at his election consent to the surrender, enter and terminate the contract, and recover the rent due up to the time of the aban-

donment; or he may suffer the premises to remain vacant, refuse to consent to a surrender, and sue on the contract at the end of the term for the entire rent; or he may give notice to the tenant of his intention to hold him for the rent, and sublet the premises for the benefit of the lessee for the unexpired term, and give him credit for the rent received to reduce his damages. It is this last rule that Street attempts to invoke in this case. While Higgins seems to have stood upon the assumption that by leasing the hotel to Mrs. Tedford, and having Street consent to such subletting, he was released from further liability, that there was a surrender of the lease. In our judgment the uncontroverted testimony shows that there was neither a surrender or an eviction. Street made no agreement to release the lessee at the time Mrs. Tedford went into the building. The lessees assigned their contract to her, but Street refused to accept her as his tenant and refused to release the lessees from the payment of the rent. He took what rent she paid, receipted to her in the name of Higgins, and gave Higgins credit for the amounts paid by her. He told her, and she communicated the statement to Fulton, that he was looking to Higgins for the rent, and for that reason made out the receipts to Higgins and delivered them to her. In order to constitute a surrender there must be shown a mutual agreement between the lessor and lessee. A lease in writing constitutes a written contract, and the lessee cannot surrender it or be released from its terms without the consent of the lessor, and it is absolutely essential to the termination of the term that both the lessor and the lessee agreed to the surrender; and, when this is shown, the tenant is no longer liable. *Stewart v. Sprague,* 71 Mich. 50, 38 N. W. 673. *Bourdercaux v. Walker,* 78 Ill. App. 63; *Milling v. Becker,* 96 Pa. State 182; *Lane v. Nelson,* 167 Pa. State 602, 31 Atl. 864; *Scheelky v. Koch,* 119 N. C. 80, 25 S. E. 713; *Livermore v. Eddy,* 33 Mo. 547; *Detroit Pharmacal Co. v. Burt,* 124 Mich. 220, 82 N. W. 893; Jones on Landlord and Tenant, sec. 539.

Was there an eviction? A number of the authorities hold that if the tenant leaves the premises vacant or unoccupied, and the landlord enters without his consent and relets the premises, such action constitutes an eviction of the tenant and terminates the lease. And, in the absence of any other circumstances, such is the law. But there is another rule as well established and of as extensive application. In Jones on Landlord and Tenant, a recent work by an able author, the rule is stated as follows: sec 549: "After an unauthorized abandonment by a tenant, the landlord may, by taking proper precautions, relet to another without creating a surrender by operation of law; but he is not bound to do so. In a recent case it was said: 'The rule sanctioned by the decided weight of authority, if, indeed, there can be said to be a diversity of opinion on the subject, is that the landlord may, in such case, at his election, relet the premises upon the abandonment thereof by the tenant, in which case the measure of his damages will be the agreed rental less the amount realized on account of such reletting, or he may permit the premises to remain vacant until the end of the term and recover his rent in accordance with the terms of the lease.' Although the landlord may relet for the benefit of the lessee and on his account without releasing him from his undertakings, such acts, if unexplained, would amount to a surrender by operation of law, as in a case where the lessor accepted the surrender."

In *Brown v. Cairns*, 63 Kan. 584, 66 Pac. 639, this identical question was involved under a lease which provided that if the lessees, at any time during the term, should fail to perform either of the promises or covenants, the lease should terminate and be at an end, and the court held that such covenants were for the benefit of the lessor only, and that the lessee could not, by failure to perform the conditions of his lease, abrogate the contract and thus secure the advantage of his own default, and that the landlord had a right to take possession and lease to another tenant for the purpose of reducing the liability of the original tenants, and

such action would not create a surrender by operation of law.   In
*Brown v. Cairns,* 107 Iowa 727, 77 N. W. 478, the question is
very fully discussed and the authorities cited supporting the rule
stated in Jones, *supra.*   To the same effect are:   *Nerrill v. Willis,*
51 Neb. 162, 70 N. W. 914; *Bowen v. Clarke,* 22 Or. 566, 30 Pac.
430; *Scott v. Beecher et al.,* 91 Mich. 590, 52 N. W. 20; *Underhill
v. Collins,* 132 N. Y. 269, 30 N. E. 576; *Biggs v. Stueler,* 93 Md.
100, 48 Atl. 727; *Stewart v. Sprague,* 71 Mich. 50, 38 N. W. 673;
*Humiston, Keeling & Co. v. Wheeler,* 70 Ill. App. 349; *Respini v.
Porta,* 89 Cal. 464, 26 Pac. 967; *Meyer & Co. v. Smith,* 33 Ark.
627; *Ledoux v. Jones et al.,* 20 La. Ann. 539; *Scheelky v. Koch,*
119 N. C. 80, 25 S. E. (N. C.), 713; *Gerhart Co. v. Brecht,* 109
Mo. App. 25, 84 S. W. 216; *Auer v. Penn.* 99 Pa. State, 370;
*Alsup v. Banks,* 68 Miss. 664, 9 So. 895; *Stewart v. Sprague,* 76
Mich. 184, 42 N. W. 1068.

We think the facts of this case come within the rule last
stated.   Higgins had gone to California and left his sublessee in
possession of the hotel.   During his absence she vacated the
building.   It required attention; the insurance was about to be
invalidated.   Street made it known to the attorney and agent of
Higgins that the property must be occupied; that he would con-
tinue to hold Higgins for the rent.   The property remained un-
occupied for over a month.   Street had a watchman to stay about
the property of nights to protect it.   Higgins had for all practi-
cal purposes abandoned the lease; he was paying no rent, and
Street then made some necessary repairs, advertised the property
for rent, and finally through a rental agent procured a tenant for
the unexpired portion of the term and gave Higgins credit on ac-
count for the rent received.   Higgins came home before the ten-
ancy expired, made no claim for the property, and made no objec-
tions to the subleasing by Street.   It cannot be said that Street
evidenced any purpose to evict the lessees or to release them from
their obligations.   Upon the other hand, the circumstances all
show that he was studiously trying to avoid releasing them, was

trying to preserve the property and lighten their damages as much as possible.

The plaintiff in error submitted certain special questions to the jury to be answered under oath, upon which they specifically found that Fulton was the agent of Higgins during the absence of Higgins, and charged with the control of the property, and that Street notified Fulton of his intention to re-enter the property and lease it on account of Higgins on the original lease. We think the evidence supports the verdict of the jury, and that there is nothing in the special findings in conflict with the verdict.

The plaintiff in error objects to some of the instructions given by the court. The instructions were in writing, and consist of several separate specific propositions, covering the entire law of the case. The only exceptions taken are as follows: "Defendant excepted to the instructions given the jury by the court." This was not a sufficient objection. *Glaser v. Glaser,* 13 Okla. 389, 74 Pac. 944. *McCabe & Steen Const. Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320.

The defendant presented four separate requests for instructions to the jury, each of which was refused, and this refusal is alleged as error. The first request is in direct conflict with the rule of law we have stated herein, and it was properly refused. Request No. 2 is also in conflict with the rule that a landlord may, under any conditions, re-enter and lease the premises for the benefit of the lessor. Request No. 3 is embraced in and entirely covered by the general instructions given by the court. Request No. 4 is also in conflict with the principle we have adopted in this opinion. There was no prejudicial error in refusing these requests.

The only other contention of plaintiff in error is that the court erred in permitting the plaintiff, Street, to testify as to what his purpose or intention was in taking possession and re-letting the property. We think this was competent testimony. His purpose or intention was a material question in relation to

his action in taking possession of the vacant property before the expiration of the lease, and, where it is proper to inquire into or determine the intent of a person, it is proper to permit such person to testify as to his intent.

We find no error in the record. The case appears to have been tried fairly and impartially, the evidence is sufficient to support the verdict, the instructions fairly and fully state the law, and the judgment should be affirmed.

The judgment of the probate court of Oklahoma county is affirmed, at the costs of the plaintiff in error.

Irwin, J., absent; all the other Justices concurring.