GOLDMAN v. BROYLES.

(Court of Civil Appeals of Texas. El Paso. Nov. 16, 1911. On Rehearing, Dec. 6, 1911.)

1. WORDS AND PHRASES—"BY."
"By," as indicating a terminal point of time, means "not later than; as early as" (citing 1 Words and Phrases, 930).

2. LANDLORD AND TENANT (§ 94*)—TERMINATION OF LEASE.
Under a lease for a definite term, with privilege to the lessor to terminate it earlier on notice, notice by the lessee to a sublessee reciting that the lessee must vacate the premises "by" or "on or before" a certain date, and requesting him to vacate on that date, did not relieve him from liability for rent to that day on his removing earlier.
[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 94.*]

3. ESTOPPEL (§ 55*)—LANDLORD AND TENANT.
That the lessee did not reply to the sublessee's letter stating that he would vacate "on or before" the day fixed, and would pay rent until able to remove, though the notice terminated his obligation to remain, does not estop the lessee to claim rent accruing after the sublessee's removal and before such date, essential elements of estoppel being absent, in that it does not appear that the sublessee relied upon any representation made by the lessee,

and since the former was not ignorant of the surrounding facts.
[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 136–141; Dec. Dig. § 55.*]

4. LANDLORD AND TENANT (§ 109*)—SURRENDER OF LEASE—REQUISITES.
To constitute a surrender of a lease, there must be a mutual agreement between the lessor and the lessee.
[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 350–371; Dec. Dig. § 109.*]

5. APPEAL AND ERROR (§ 1011*)—REVIEW—FINDINGS—CONCLUSIVENESS.
Findings on conflicting evidence are conclusive on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

6. LANDLORD AND TENANT (§ 195*)—BREACH BY TENANT—DAMAGES.
On a tenant wrongfully vacating the premises before expiration of his term, the landlord need not relet for the tenant's benefit.
[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 790–793; Dec. Dig. § 195.*]

7. PLEADING (§ 245*) — TRIAL AMENDMENT — JUDICIAL DISCRETION.
It was not an abuse of discretion to permit one suing on a lease to make a trial amendment of the petition to correct a clerical error in stating the date of the lease.
[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 245.*]

8. JURY (§ 25*)—JURY TRIAL—RIGHT TO.
Demand for a jury made by defendants, brought in by plaintiff during the trial, was properly refused; the demand being made to postpone the trial.
[Ed. Note.—For other cases, see Jury, Dec. Dig. § 25.*]

9. APPEAL AND ERROR (§ 396*)—NOTICE—NECESSITY.
Due notice of appeal is essential to appellate jurisdiction.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2099–2102; Dec. Dig. § 396.*]

10. APPEAL AND ERROR (§ 509*)—RECORD—REQUISITES—SHOWING OF NOTICE.
Giving of notice of appeal should appear from the record.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2317; Dec. Dig. § 509.*]

11. APPEAL AND ERROR (§ 509*)—RECORD—INSUFFICIENCY.
The Court of Civil Appeals will notice of its own motion failure of the record to show notice of appeal.
[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 509.*]

On Rehearing.

12. COSTS (§ 231*)—ON APPEAL—TAXATION.
Costs will not be taxed against appellee on reformation of the judgment by reducing the amount, if the error in computation was not drawn to the trial court's attention.
[Ed. Note.—For other cases, see Costs, Dec. Dig. § 231.*]

Appeal from El Paso County Court; Albert S. Eylar, Judge.

Action by J. I. Broyles against H. W. Goldman and others. Judgment for plaintiff,

and defendant Goldman appeals. Reformed and affirmed.

Patterson & Wallace and P. E. Gardner, for appellant. Stanton & Weeks and Jay Good, for appellee.

McKENZIE, J. Appellee, J. I. Broyles, instituted this suit in the county court of El Paso county against appellant, H. W. Goldman, to collect rents alleged to be due by virtue of a written contract of lease for a certain store building. Before filing the suit appellee sued out a distress warrant, and caused it to be levied upon property belonging to the appellant, which the appellant replevied, making his replevy bond with B. Blumenthal and E. C. Pugh as sureties thereon.

The ·appellant answered, ˙pleading general demurrer, general denial, and specially that he did not owe, because the notice to vacate which he had received from appellee and his answer thereto constituted a termination of the lease contract when he removed from the premises, and, further, that appellee was estopped from asserting any claim for rents because of his silence and failure to object to the appellant's construction of the effect of the notice as to the time and manner of the termination of the lease contract; and also appellant pleaded a counterclaim consisting of two items, the first item being the amount which said premises should have brought had appellee used ordinary care to sublet same after appellant had removed therefrom, and the second item· was for the sum of $88, alleged to be due by appellee on account of a wrongful conversion by him of certain shelving and lumber which were left in the store building after appellant had removed therefrom. The case was tried by the court without a jury, and during the progress of the trial the appellee made B. Blumenthal and E. C. Pugh, who were sureties on the replevy bond, parties defendant in the suit. It is not shown by what authority they were made such parties, but we conclude that they were made parties by mutual consent. Immediately upon their being made parties, the defendants B. Blumenthal and E. C. Pugh demanded a trial by jury and deposited with the clerk the necessary jury fee, which demand the court refused. It also further appears that during the progress of the trial the court permitted the appellee, by trial amendment, to amend his petition, correcting an allegation as to the date of the lease contract. The court rendered verdict for appellee, and judgment was entered for the sum of $240.70 and for foreclosure of the landlord's lien provided for in the lease contract, and rendered judgment against B. Blumenthal and E. C. Pugh as sureties on the replevy bond.

It appears from the evidence that the lease contract was dated July 16, 1908, and provided that the lease of the premises should commence on the 1st day of August, 1908, and end the 31st day of December, 1910, unless sooner terminated, as provided for in the sixth paragraph of said contract. The sixth paragraph reads as follows: "It is further agreed and understood that if the present owner of this property, W. J. Fewel, shall sell or desire to build on said premises, the party of the first part may terminate the aforesaid lease by giving a notice of six (6) months, in which event all the rights of the party of the second part, herein provided for, shall thereby terminate, and said party of the second part agrees to peaceably vacate the said premises according to the terms of said notice." It further appears that on November 18, 1909, W. J. Fewel, the party mentioned in the sixth paragraph of the lease contract, wrote the appellee the following letter: "Notice to J. I. Broyles from W. J. Fewel. El Paso, Texas. Mr. James I. Broyles, El Paso, Texas—Dear Sir: In accordance with paragraph 'Seventh' of my certain contract and lease with you, of date December 15th, 1905, which is of record in Book 102, at page 60 of the records of El Paso county, Texas, I hereby terminate and cancel said contract and lease, and request, notify, and demand that you surrender possession to me by the 20th day of May, 1910, the property described in said contract and lease, to wit, the westerly 31 feet of lot 35, in block 6, in the city of El Paso, Texas, according to the map of said city by Anson Mills, together with the buildings, houses and improvements thereon. It is provided in paragraph 'Seventh' of said contract and lease that in case I shall sell or desire to build on the property above described I may terminate said contract and lease by giving you a notice of six months, in which event all the rights which you have by virtue of said contract and lease shall thereby terminate, and that you will peaceably vacate said premises. You are notified that I desire to build on the property above described, and in accordance with that desire I hereby give you the notice of six months provided in said paragraph of said contract, and demand that you vacate said premises by the 20th day of May, 1910. Very truly yours [Signed] Will J. Fewel.˙ Dated this 18th day of November, 1909." And on the same day, appellee, having received the Fewel letter, wrote appellant a letter inclosing a true copy of the Fewel letter, which letter is as follows: "I herewith hand you a true copy of a letter this day received by me from Will J. Fewel, notifying me, as you will observe, that I am to vacate the premises on or before the 20th day of May, 1910. I desire to give you notice of the foregoing, which is in accordance with the provisions of my lease, and request you to arrange to vacate on the date named in said letter, viz.: May 20th, 1910. Yours very truly, J. I. Broyles." The appellant, upon receiving the Broyles and the Fewel letters, wrote appellee as follows: "Yours of

the 18th inst., giving me notice to vacate the premises leased from you, duly received. I hereby accept your notice, and agree to vacate the same on or before the 20th day of May, 1910. While this terminates my obligation to remain in the premises, or to pay any rent after vacating the same, I agree to pay the rate provided in the lease until I am able to move into some new premises. Yours truly, H. W. Goldman." It further appears from the evidence that, upon the appellee receiving the last-mentioned letter from the appellant, there was no reply made thereto, nor was there any statement made by either party as to the contents of said letter.

On the 27th day of March, 1910, the appellant removed from the premises, having paid the rent thereon to the date of his vacating. After vacating the premises, it appears that the appellant on several different occasions tendered to the appellee the keys to the store building, and each time the appellee refused to accept same. The appellant finally sent his porter to appellee with the keys. The porter placed the keys upon the counter in the appellant's place of business, and ran out. It further appears that, after the appellant had removed from the premises, a party approached appellee, making inquiry as to the renting of the premises; however, making no definite offer. Appellee told said party that he had nothing to do with the renting of the premises, and referred him to the appellant. Appellant testifies that the party came to see him about renting the premises, and, under the advice of the appellant's attorney, said party was referred to the appellee. No contract was made for the lease of the premises with this party, and neither party, it seems, made special effort to relet the premises. The premises remained vacant except during the months of April and May, when the appellee relet the same for the sum of $30. The evidence is conflicting as to the appellee's conversion of the lumber and shelving.

[1, 2] Appellant's first assignment of error is as follows: "The court erred in finding a verdict in favor of the plaintiff in this cause because the uncontroverted testimony was that the plaintiff had notified the defendant to vacate said premises by the 20th day of May, 1910. [The word "by" meaning "on or before."]" Under which appellant submits the following as a proposition: "Plaintiff having notified defendant of the termination of his lease, and receiving written acceptance of this notice from the defendant of his intention to move, the same constituted a cancellation of the lease at such time as defendant should elect to move out of the premises, and, when defendant moved from the premises and offered to surrender the keys, the lease thereby became canceled." We do not agree with the appellant in his proposition. The word "by" has many significations, but, when used to designate a terminal point of

time, it is defined by the Century Dictionary to mean "not later than; as early as." The Standard defines it "not later than," and Webster's "not later than; as soon as." 1 Words and Phrases, p. 930. And as used in the Fewel letter, it could mean no other than that the premises should be vacated not later than the 20th day of May, 1910. By a reading of the several letters, we think there coud be no doubt as to their meaning, because the letter of the appellee specifically stated a day certain. The language is clear and convincing, as follows: "I desire to give you notice of the foregoing, which is in accordance with the provisions of my lease, and request you to arrange to vacate on the date named in said letter, viz., May 20th, 1910." Appellant, if he desired, could remove from the premises at an earlier date, but his removing therefrom could not operate as a termination of the lease contract, nor did his removing therefrom release him from the payment of the rents due or to become due under same. The notice as contained in the Fewel letter, and as reiterated in the appellee's letter to the appellant, fixed a date certain for the termination of the lease contract, and when the notice was received by the appellant, which was in terms of the sixth paragraph of the contract, the date was thereby fixed as much so as if same had been written in the contract at the time of its execution, and was as binding upon the parties as if made then.

[3, 4] Under the second assignment of error, appellant contends that when the appellee received appellant's letter, and was informed by said letter that he (appellant) intended to move from the leased premises at such time as he should secure a new location, and in the absence of protest on the part of the appellee to the appellant as to the statement, or on account of the appellee's silence when such statement was made in said letter, the contract would thereby terminate when appellant moved from or vacated the premises, and that the appellee would thereby be estopped from claiming otherwise. We do not agree with the appellant, because, to constitute an estoppel, a number of essential elements are necessary, and must enter into and form a part thereof in all its phases and applications, some of which elements are, in substance, that the truth concerning the facts of the representations must be unknown to the party claiming the benefit of the estoppel at the time of such representations and at the time when the representations are acted upon, and also the representation or the conduct of the estopped party must be made with the intent, or, at least, with the expectation that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be acted upon by such other party, and we further believe that the cases all agree that there can be no estoppel unless the party who alleges it re-

lied in good faith upon the representation or upon the silence was induced to act by it, and, thus relying and induced, did, as a fact, take some action.

In this case it cannot be said that the appellant relied upon any representation made by the appellee, nor can it be said that appellant was ignorant of the facts as to the contents of the contract as between him and the appellee or as to the contents and meaning of the notice which the appellee, through his letter, served upon him. The contract and the notice were susceptible of but one construction, and the appellant was in possession of and was familiar with the terms of each. If either party was at fault, it seems to us that it was the appellant. Again, there arises the further question of good faith on the part of the appellant in making the representation as contained in the letter. The construction as placed by the appellant upon the notice was, no doubt, by the trial court construed to be self-serving. It was certainly to the advantage of the appellee, the time being short when the lease contract was to expire on account of the notice given, to have the premises occupied during that time, and to have the lessee to pay to him the rentals which would necessarily accrue to the appellee under the contract, and it was known to the appellant by reason of the copy of the letter which the appellee had received from W. J. Fewel that on the 20th of May appellee was required to surrender the premises to the said Fewel. Appellant could not claim a surrender of the premises because, in order to constitute a surrender of a contract of lease, there must be a mutual agreement between the lessor and the lessee. A lease in writing constitutes a written contract, and the lessee cannot surrender it or be released from its terms without the consent of the lessor, and it is essential to the termination of the term of a lease that both the lessor and the lessee agree to the surrender. Higgins v. Street, 19 Okl. 45, 92 Pac. 153, 13 L. R. A. (N. S.) 398. Nor can a lessee terminate a written contract of lease in contravention of its express terms by his acts alone. Faseler v. Kothman, 70 S. W. 321. We hold that the lessor did not agree to the surrender. Again: "The 'intention to abandon the contract at some future date is no breach of it; but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate the contract itself, and to terminate the contractual relations between the parties. This affords to the other party the opportunity to accept the declaration, if he chooses to do so, and thus make effective the declaration of intention not to perform, rendering the contract, thereby, one that is broken on the part of the promisor himself. But, to have this effect, the declaration of an intention not to perform the contract in the future must be unconditional in its terms." Kilgore v. N. W. T. Bapt. Ed. Ass'n, 90 Tex. 139, 37 S. W. 598. Was the appellant's notice of intention to abandon the lease contract, if same can be considered a notice, before its expiration, in positive terms and unconditional? We think not. The notice was predicated upon the happening of a condition, as expressed in appellant's own words "until I am able to move into some new premises," which condition might or might not happen before the expiration of the contract by the very terms of the notice, viz., May 20, 1910. The mere silence of appellee, under the facts in this case, does not estop him from asserting his claim for the rents due under the contract.

[5, 6] Appellant's third assignment of error and the proposition thereunder, in substance, complain of the verdict and of the court's failure in arriving at the verdict to deduct from the rental as due under the contract the amount for which the appellant by the use of ordinary care could have rented the premises to other parties for. The appellee testified to collecting about $30 as rental on the premises during the months of April and May, and, from an examination of the judgment as to the amount, it would appear that the court did deduct the $30 from the amount which he evidently found to be due under the contract. The evidence being conflicting as to the use on the part of the appellee of ordinary care in the subletting of the premises, and the fact that appellee referred the party who approached him for the purpose of leasing the premises to the appellant, and the court's verdict being in favor of the appellee, the question is concluded in favor of the appellee. We hold, however, as a matter of law, that, where a tenant breaches the contract, the landlord is not obliged to endeavor to let the premises for the benefit of the tenant who refuses to continue in occupancy under the lease. Minnie Racke v. Anheuser Busch Brewing Ass'n, 17 Tex. Civ. App. 167, 42 S. W. 774; Davidson v. Hirsch, 45 Tex. Civ. App. 631, 101 S. W. 269. In Jones on Landlord and Tenant the rule is stated as follows (section 549): "After an unauthorized abandonment by a tenant, the landlord may, by taking proper precautions, relet to another, without creating a surrender by operation of law; but he is not bound to do so. In a recent case it was said: 'The rule sanctioned by the decided weight of authority, if, indeed, there can be said to be a diversity of opinion on the subject, is that the landlord may in such cases, at his election, relet the premises upon the abandonment thereof by the tenant, in which case the measure of his damage will be the agreed rental, less the amount realized on account of such reletting; or he may permit the premises to remain vacant until the end of the term and recover his rent, in accordance with the terms of the lease.' Merrill v. Willis, 51 Neb. 162, 70 N. W. 914." And in this case, the landlord, had he so desired,

could have accepted the premises and sublet them, and have collected his rent as against the tenant less the amount for which he had sublet said premises. But it appears that the landlord refused to accept the surrender of the premises, and sought to hold the tenant for the full amount as due under the contract, less the amount of $30 which the premises brought during the months of April and May.

The fourth assignment of error raises practically the same issue as the third assignment of error, and, for the reasons already given, the same is overruled.

The fifth assignment of error, which complains of the court's failure to find for appellant on his counterclaim for conversion of lumber and shelving, is overruled. The evidence is conflicting as to the conversion, and the court's finding in favor of appellee concludes the question.

[7] The sixth assignment of error complains of the action of the court in permitting the appellee to amend his petition after announcement of trial and after appellee had introduced part of his testimony. It appears from the record that the amendment was for the purpose of making a correction as to the date of the lease contract. The allegation in the petition showed a different date, which was made, evidently, through a mistake and was merely clerical in its nature. It has been frequently held that the court may in the exercise of a sound discretion permit an amendment after an announcement of ready for trial by the parties, provided it seems necessary to attain the ends of justice. T. & N. O. Ry. Co. v. Chas. Goldberg, 68 Tex. 685, 5 S. W. 824; Radam v. Capital Microbe Destroyer Co. et al., 81 Tex. 122, 16 S. W. 990, 26 Am. St. Rep. 783. We hold that the court did not abuse this discretion, and we overrule the assignment.

[8] The seventh assignment of error complains of the action of the court in refusing the demand of the defendants B. Blumenthal and E. C. Pugh for a jury. It appears from the record that the defendants' names were inserted in the plaintiff's petition after the trial had commenced in the case, and the defendants immediately demanded a jury. Immediately upon the demand for a jury, the plaintiff offered to withdraw the names of said defendants, but the defendants objected to the withdrawal, and the court refused the defendants' demand for a jury. It appears, we think, from the actions on the part of the defendants that the demand for a jury was for the purpose of postponement of the trial. They had not been cited in the case, and their appearance, after the plaintiff had inserted their names in his petition, and during the progress of the trial, showed a consent and an agreement on their part to abide the issue of the case and to accept same in its then condition, and we think the court was justified, under the circumstances, in refusing the defendants' demand.

[9-11] It appears, however, from the record that the defendants B. Blumenthal and E. C. Pugh failed to give notice of appeal, and, on account of their failure to give the notice of appeal, which was required by law, as to them the appeal has not been perfected. It is a general rule of appellate practice that due notice of the appeal is essential to give the appellate court jurisdiction. W. U. Tel. Co. v. O'Keefe, 87 Tex. 423, 28 S. W. 945. The giving of notice of appeal should be shown by the record. Leon & H. Blum v. Wettermark, 58 Tex. 125. Although the matter has not been called to our attention by the brief of either party, yet, it being one of jurisdiction, we think it is the duty of this court to take notice that the record does not show that the defendants B. Blumenthal and E. C. Pugh gave such notice.

Having disposed of all the assignments, the judgment of the court below is affirmed.

Affirmed.

### On Rehearing.

In appellant's motion for rehearing it is suggested that the court below entered judgment for the sum of $240.70, which, under the undisputed facts in the case, should have been for $231. We therefore reform the judgment, as affirmed in our original opinion, and now here render judgment for the sum of $231. [12] It is also suggested that the costs in this appeal should be charged to the appellee. We do not agree with the appellant in this contention, because it appears that the error in the judgment, had the same been called to the attention of the trial court, could have been corrected without the necessity of this appeal, and our attention having been called to the error for the first time upon the motion for rehearing, we therefore tax the costs of the appeal against the appellant. Henry v. Benoit, 70 S. W. 359; Gunn v. Miller, 26 S. W. 278; Helm v. Weaver, 69 Tex. 143, 6 S. W. 420; White v. Manning, 46 Tex. Civ. App. 298, 102 S. W. 1160; Cummings & Co. v. Masterson, 42 Tex. Civ. App. 549, 93 S. W. 500; Yoe v. Milam County Co-operative Cotton Mercantile Alliance, 32 S. W. 162; Dodge v. Richardson, 70 Tex. 209, 8 S. W. 30.

The other matters complained of in the motion for rehearing are overruled.