W. A. LEWTER, Executor of the Last Will and Testament of Ed Holder, deceased, Plaintiff in Error,

v.

Floyd HOLDER, Defendant in Error.

No. 38547.

Supreme Court of Oklahoma.

Jan. 19, 1960.

Donald B. Darrah, Durant, Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

Arney, Barker & Donley, Clinton, Jas. Z. Barker, Clinton, of counsel, for defendant in error.

BERRY, Justice.

In this action, the validity of a written lease under date of January 1, 1953, between Ed Holder, hereafter referred to as "owner", and defendant in error, Floyd Holder, hereafter referred to as "Floyd", covering 880 acres of land in Custer County, Oklahoma, is questioned.

Owner instituted this action. Following his death in 1956 the action was revived in the name of plaintiff in error, W. A. Lewter, hereafter referred to as "executor", who had been appointed executor of owner's estate.

The issues in this case are made up by owner's amended petition, Floyd's answer thereto and executor's reply to said answer.

In the amended petition, owner alleged that he owned the land in controversy; that Floyd, who was his son, had for many years farmed the land under an oral share-crop agreement; that owner at all times controlled possession of the land; that Floyd was asserting a leasehold interest in the land; that Floyd "abandoned the original agreement of the parties hereto in that he has attempted to sublet said premises to another person, and that said subletting was done without the permission of the plaintiff herein and against his will, and that by virtue thereof, the said defendant, Floyd Holder, has forfeited any rights which he may have had to a tenancy upon said premises"; that Floyd's claim to the land was adverse and that Floyd had no right, title or interest in the land.

Insofar as material to the issues presented by this appeal, Floyd alleged in his answer that he was in possession of the land under a written lease, a copy of which was attached to the answer as a part thereof.

In his reply which was verified, executor, after denying the allegations of the answer, plead that the lease was not signed by owner; that the lease was not given in good faith; that no consideration was paid for the lease; that the lease, if executed, was abandoned and that the lease was void.

In his reply brief, executor states that the pleadings "raise two issues upon which the trial was had. 1. Did Ed Holder actually sign the contract of January 1, 1953? 2. If he did sign it, was it ever acted upon, was there a consideration for it, or had it been abandoned before it was acted upon?"

The pertinent portions of the lease in controversy are these:

"It is agreed by and between the parties hereto that first party (owner) does hereby lease and let unto second party (Floyd) the following described real property located in Custer County, State of Oklahoma, described as follows: (describing land) for a period of twenty (20) years from January 1, 1953 until January 1, 1973.

"It is agreed that second party will pay to first party the sum of $600.00 per year cash rental, the first payment being made on this date, receipt of which is hereby acknowledged by first party, and a like amount on the 1st day of each succeeding year hereafter during the life of this Contract.

"It Is Understood And Agreed that second party will have the exclusive right to pasture said property according to his desires, and to fence and build upon said premises according to his desires, and will have the right and privilege upon the termination of this Contract to remove any and all improvements placed thereon by second party.

"Second party will have the right and privilege to build any and all farm ponds, dykes or reservoirs that he deems advisable.

"In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

"Ed Holder
"First Party
"Floyd Holder
"Second Party."

An unexecuted form of acknowledgment appears at the close of the lease.

The relevant facts appear to be that of his first marriage, owner fathered two daughters, Elliwese Stalcup and Beulah Smallwood, and one son, Floyd. Following his wife's death in 1931, owner married Nettie B. Holder.

Owner owned 1,080 acres of land. Two hundred acres of this land is referred to as the "home place" and the remaining 880 acres is the land involved in this controversy. Eighty acres of the 880 tract is agricultural land. The remaining 800 acres is grass land. During his minority Floyd lived with his father on the home place and assisted his father in operating the farming and cattle business that his father engaged in. After reaching majority, Floyd rented land from his father on a share-crop basis and was so renting in 1952.

Floyd testified that in the latter part of 1952 he and his father entered into negotiations covering leasing of the 880 tract which culminated in the written lease heretofore referred to. It is admitted that in 1952 and 1953 owner was competent to transact business. Owner ceased to be active in the cattle and farming business in 1952.

In November 1955, owner conveyed the 80-acre tract of agricultural land to his daughter, Beulah Smallwood. A correction deed was subsequently executed and recorded in 1956. Beulah testified that in 1956 she learned that Floyd claimed to hold a written lease from owner covering the 880-acre tract. She testified that a lawyer made a copy of a lease from owner to Floyd available; that she read the lease but that it was not a copy of the lease in controversy. Mrs. Holder testified to the same effect. The lawyer, however, testified that the copy that he made available was a photostatic copy of the lease in controversy. Within a short time after Beulah read a copy of the lease, this action was filed.

Executor sought to prove by statements made by owner, by testimony of persons residing in the vicinity of the land that they did not learn of the lease until after owner's death, and by the fact that owner filed this action, that owner did not in fact sign the lease. Floyd objected to testimony relative to owner's statements which objection was sustained. Executor does not contend that the court erred in sustaining Floyd's objections. One of the neighbors testified that he had knowledge of the lease prior to this action being filed. Floyd testified that owner signed the lease in his presence, and executor, who was an officer of a bank at which owner did business, testified that the signature "Ed Holder" appearing on the lease was owner's signature. Floyd and another witness testified that owner made the statement that he did not file this action.

Executor, over Floyd's objection, sought to prove that Floyd failed to pay the annual rent provided in the contract. Mrs. Holder testified that she kept the records pertaining to operation of the land and that same failed to show that Floyd paid any cash rent. Executor testified that the records of the bank of which he was an officer failed to show any sizeable deposits that would reflect that Floyd paid the cash rent provided for in the lease. His records did show the deposit of accruals from the sale of crops and one deposit of $163.68 that apparently represented cash rent. Owner did business at other banks and there is no testimony relative to the records of said banks. It is recited in the lease that the 1953 annual rental of $600 was paid and received. Floyd testified that the 1954,

1955 and 1956 annual rents were paid in work, crops or cash; that his father preferred to take a portion of the crops instead of the value of the crop in cash. Floyd timely tendered the 1957 rental to executor, which tender was refused. Floyd testified that owner furnished wire used in a fence that Floyd built.

The trial court, following a rather extended trial, found and held that owner executed the lease in controversy; that the lease is valid and subsisting; that Floyd was in possession of the 880 acres covered by the lease; that he never abandoned the lease and that the 1957 cash rental and subsequent annual rentals be divided between Beulah and other interested parties as provided in the judgment. The court in said judgment did not pass "upon the question of rents that might be due and unpaid under the terms of (the) lease for the time prior to 1957." From order denying executor's motion for new trial, this appeal was perfected.

Executor contends that "the evidence is insufficient to support the judgment" and that "the trial court erred in not administering complete relief".

■■■ Executor asserts that the evidence fails to show that owner executed the lease. Floyd testified that owner executed the lease in his presence and, executor testified that the signature "Ed Holder" appearing on the lease was owner's signature. This testimony clearly sustains the trial court's finding that owner executed the lease.

Executor also asserts that Floyd and owner did not consider the lease as effective and continued for 1953 and subsequent years to operate under the oral share-crop lease agreement in effect prior to 1953.

■■■ It is recited in the lease that the annual cash rental for 1953 was paid and received. Floyd testified that for 1954 to 1956, inclusive, he paid the annual rent in work, crops and cash; that his father carried from $100 to $1,000 on his person and implied that his father may not have deposited the cash rent paid; that he tendered the annual rental due in 1957 to executor. This evidence clearly sustains the trial court's finding that the lease was considered by the parties thereto as being in effect and not abandoned. The fact that owner paid for wire used in building a fence or fences is not necessarily indicative of intent on Floyd's part to consider the lease as not being in effect. Under the lease Floyd had the privilege "to fence" but also had the privilege of removing improvements placed upon the land. It is entirely possible that owner, upon termination of the lease, wished to retain the fence built by Floyd and therefore furnished the fencing material.

■■■ Rights acquired under a contract may be abandoned or relinquished by agreement or conduct clearly indicating such purpose, but to constitute an abandonment an actual intent to abandon must be shown. 17 C.J.S. Contracts § 412, p. 898. In Kizziar v. Pierce, 204 Okl. 51, 54, 226 P.2d 941, 945, this is said:

"(6) In 1 Am.Jur. Abandonment, § 8, it is pointed out that the elements of abandonment are: (1) an intention to abandon; and (2) an external act whereby such intention is carried into effect. The intention to abandon is the paramount inquiry.

"And in § 9, it is stated further: '* * * Abandonment consists of two elements—act and intention. The act of relinquishment of possession or enjoyment must be accompanied by an intent to part permanently with the right to the thing; otherwise there is no abandonment. * * *'"

See also Higgins v. Street, 19 Okl. 45, 92 P. 153, 13 L.R.A.,N.S., 398, and Ross v. Tabor, 53 Cal.App. 605, 200 P. 971, 975.

■■■ Executor contends that in view of the fact that this is a case cognizable in equity, the trial court erred in not administering complete relief by adjudicating the amount of rent unpaid (if any) due under the lease for years prior to 1957. Floyd

objected to evidence offered in connection with rentals that might be due under the lease for years prior to 1957 on the grounds that such evidence was without the scope of the issues formed by the pleadings. The objection was overruled. The evidence was admissible on the issue of abandonment of the lease and this is apparently the reason the court overruled same. But the court's action in overruling the objection does not establish that the court thought that the evidence, under the issues, was admissible on the question of whether Floyd was in arrears on rent due under the lease. In view of Floyd's objection the pleadings cannot be considered as having been amended to conform to the proof made.

Floyd also makes the contention that on the issue under consideration the parties were not in a position to try said issue at the trial. His position is clearly established by the record. Floyd testified that he had paid or tendered all rentals that were due, and probably could produce documentary evidence to said effect, but that the documentary proof was at his home. Executor's proof as to nonpayment of rent was fragmentary and far from conclusive. The trial court no doubt concluded that it would be unfair to the parties to pass upon the issue under discussion until such time as the parties were prepared to make proof thereon and moreover, Beulah, who no doubt claims a portion of the 1956 rental, was not a party to this action.

■ In view of the fact that the pleadings did not raise the issue of rent, if any, owing by Floyd; that neither party was ready on the date of the trial of this case to try said unraised issues and that Beulah was not a party to this action, the trial court did not err in declining to adjudicate said issue.

Executor makes no complaint relative to the formula adopted by the court for distribution of the 1957 rentals and subsequent rentals.

Affirmed.