MTGLQ INVESTORS v. WITHERSPOON
2023 OK 62
Case Number: 118355
Decided: 06/06/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 62, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

MTGLQ INVESTORS, L.P., Plaintiff/Appellant,
v.
JOE H. WITHERSPOON, Defendant/Appellee,
and
CINDY D. WITHERSPOON and OTHER OCCUPANTS OF THE PREMISES, Defendants.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION III

¶0 Plaintiff/Appellant MTGLQ Investors, L.P. brought a mortgage foreclosure action against Defendant/Appellee Joe H. Witherspoon and Defendant Cindy D. Witherspoon. The trial court found the statute of limitations had expired and granted summary judgment in favor of the Witherspoons. MTGLQ appealed, and Division III of the Court of Civil Appeals affirmed. We granted certiorari and hold that (1) pursuant to 12A O.S.2011, § 3-118

CERTIORARI PREVIOUSLY GRANTED;
ORDER OF THE COURT OF CIVIL APPEALS IS VACATED;
JUDGMENT OF THE TRIAL COURT IS REVERSED;
CAUSE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.

Benjamin G. Kemble, Akerman, LLP, San Antonio, Texas, for Appellant.

Joe H. Witherspoon, pro se, Appellee.

KANE, C.J.:

¶1 We granted Plaintiff/Appellant MTGLQ Investors, L.P.'s petition for certiorari to address (1) when the statute of limitations begins to run if the note holder exercises the option to accelerate the maturity date of the entire loan balance after the borrower defaults on an installment obligation; and (2) whether the note holder's voluntary dismissal of a foreclosure action decelerates the installment loan as a matter of law. We hold that, pursuant to 12A O.S.2011, § 3-118

FACTS AND PROCEDURAL HISTORY

¶2 In 2004, the Defendant/Appellee Joe H. Witherspoon and Defendant Cindy D. Witherspoon (collectively, the Witherspoons) obtained an installment loan in the amount of $66,400.00 from a mortgage company. The promissory note ("Note") was secured by a mortgage ("Mortgage"). The Mortgage was a standard Fannie Mae/Freddie Mac uniform security instrument containing an optional acceleration clause.

¶3 On July 1, 2014, Bank of New York Mellon (BNYM), as the holder of the Note, filed a petition to foreclose the Mortgage. BNYM alleged that the Witherspoons defaulted on the Note and Mortgage by failing to pay the monthly installment due on December 1, 2010 and that they had failed to make any subsequent payments. BNYM asserted that it had elected to accelerate the debt and declare the entire balance due and payable. On October 13, 2014, BNYM voluntarily dismissed the foreclosure action without prejudice.

¶4 After a series of transfers and assignments, MTGLQ became the holder of the Note and Mortgage on June 4, 2018. On August 21, 2018, MTGLQ sent the Witherspoons a Notice of Intent to Foreclose. The letter informed the Witherspoons that they had defaulted on the Note and Mortgage by failing to pay the monthly installment due on January 1, 2013 and that failure to cure the default by paying all past due payments on or before September 25, 2018 "may result in acceleration of the sums secured by this [Mortgage], foreclosure by judicial proceeding and sale of the Property." Then, on December 7, 2018, MTGLQ filed the present foreclosure action. In the Petition, MTGLQ alleged that the Witherspoons defaulted by failing to pay the installment due on January 1, 2013 and that they had failed to make any subsequent payments. MTGLQ asserted that it had elected to accelerate the debt and declare the entire balance due and payable.

¶5 MTGLQ and the Witherspoons filed motions for summary judgment. The Witherspoons argued BNYM accelerated the loan when they defaulted on December 1, 2010 and that MTGLQ filed its petition to foreclose on December 7, 2018, which was more than six years after BNYM accelerated the debt and, therefore, the claim was barred by the statute of limitations. See 12A O.S.2011, § 3-118

STANDARD OF REVIEW

¶6 Summary judgment is reviewed de novo. Rickard v. Coulimore, 2022 OK 9505 P.3d 920Id. In this case, the material facts are not in dispute. Therefore, only questions of law are involved. Appellate courts have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal rulings. See Fanning v. Brown, 2004 OK 785 P.3d 841

ANALYSIS

The Accelerated Due Date

¶7 We will first review the trial court and Court of Civil Appeals's determination that the note holder accelerated the installment note and the statute of limitations began to run on December 1, 2010.

¶8 Generally, on an installment note, the statute of limitations begins to run against each installment on the day following its maturity. See Okla. Brick Corp. v. McCall, 1972 OK 70497 P.2d 215 A separate claim accrues as to each missed installment payment. Id. ¶ 10, at 217. An optional acceleration clause gives the mortgagee the option, in the event of the mortgagor's default on an installment note, to accelerate the maturity date of the note, making the entire loan balance due immediately. The law is well-settled that when an installment note and mortgage contain an optional acceleration clause, the statute of limitations begins to run on the date the mortgagee exercises the option to accelerate. See Union Central Life Ins. Co. v. Adams, 1934 OK 69338 P.2d 26

¶9 This has been codified in the applicable statute of limitations:

[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six (6) years after the due date or dates stated in the note or, if a due date is accelerated, within six (6) years after the accelerated due date.

12A O.S., § 3-118immediately. Therefore, the date the mortgagee exercises its option to accelerate is, by definition, the "accelerated due date," for purposes of 12A O.S., § 3-118

¶10 BNYM, in the first petition to foreclose, alleged that the Witherspoons went into default when they missed the December 1, 2010 installment payment. The Note and Mortgage contained optional acceleration clauses.

¶11 We hold that BNYM exercised its option to accelerate the installment note on July 1, 2014, and, according to 12A O.S., § 3-118

Deceleration

¶12 We now turn to whether BNYM's voluntary dismissal of the first foreclosure action on October 13, 2014 decelerated the note as a matter of law. This is an issue of first impression in Oklahoma.

¶13 The Court of Civil Appeals relied solely on PNC Bank, N.A. v. Unknown Successor Trs., 2020 OK CIV APP 60479 P.3d 238PNC Bank, the Court of Civil Appeals established its own criteria for the deceleration of an installment loan: (1) there must be a contractual provision authorizing deceleration; (2) the creditor must take affirmative action evidencing intent to decelerate; and (3) the lender must give the borrower notice of deceleration by means reasonably calculated to inform the debtor of the deceleration and that the debtor's installment obligation is reinstated. See id. ¶¶ 24-56, 479 P.3d at 244-50. The PNC Bank court held that "[t]he mere act of voluntary dismissal without more" did not satisfy its criteria. Id. ¶ 59, at 250.

¶14 Opinions published by the Court of Civil Appeals are merely persuasive and are not accorded precedential value. See Skinner v. John Deere Ins. Co., 2000 OK 18998 P.2d 1219In re Amend. Okla.Sup.Ct.R. 1.200, 2023 OK 21PNC Bank.

¶15 First, a deceleration clause in the note or security instrument is not required to decelerate. The Note and Mortgage do not contain deceleration provisions. MTGLQ asserts that no other jurisdiction requires an express deceleration clause in the note or security instrument. We also recognize that a deceleration clause is not in the standard Fannie Mae/Freddie Mac security instrument. The Note and Mortgage do, however, contain optional acceleration clauses, provisions authorizing the lender to waive its rights under the contract, and non-waiver provisions. Specifically, the Note and Mortgage provide that the lender's waiver of its right to exercise the option to accelerate does not prevent the lender from later exercising the option to accelerate. Deceleration is, effectively, the revocation of the previously exercised option to accelerate and waiver of such right.

¶16 We agree, generally, with PNC Bank's point that an affirmative act indicating intent to decelerate is required. It has long been the law in Oklahoma that acceleration requires an affirmative act indicating clear and unequivocal intent to accelerate an installment note. See Union Central, 1934 OK 69338 P.2d 26See Lewter v. Holder, 1960 OK 6348 P.2d 845

¶17 We disagree with the PNC Bank court's conclusion that voluntarily dismissing the foreclosure action, by itself, does not constitute an affirmative act clearly indicating intent to decelerate or abandon acceleration. Just as the act of filing a petition to foreclose is an affirmative act indicating intent to accelerate the note, the act of dismissing the petition to foreclose is an affirmative act demonstrating the lender's intent to decelerate or abandon acceleration. See Freedom Mortg. Corp. v. Engel, 169 N.E.3d 912, 926 (N.Y. 2021) ("[W]here acceleration occurred by virtue of the filing of a complaint in a foreclosure action, the noteholder's voluntary discontinuance of that action constitutes an affirmative act of revocation of that acceleration as a matter of law, absent an express, contemporaneous statement to the contrary by the noteholder."). We hold that BNYM's voluntary dismissal of the foreclosure petition, the filing of which had accelerated the loan, clearly indicated it was decelerating or abandoning its right to accelerate.

¶18 There are several advantages to the bright-line rule that a voluntary dismissal, absent the lender's contemporaneous statement to the contrary, results in revocation or abandonment of acceleration. First, to hold otherwise would disincentivize dismissal. Our holding benefits both lender and borrower. As the New York Court of Appeals observed:

A clear rule that a voluntary discontinuance evinces revocation of acceleration (absent a noteholder's contemporaneous statement to the contrary) makes it possible for attorneys to counsel their clients accordingly, allowing borrowers to take advantage of the opportunity afforded by the de-acceleration--reinstatement of the right to pay arrears and make installment payments, eliminating the obligation to immediately pay the entire outstanding principal amount in order to avoid losing their homes. A return to the installment plan also makes it more likely that borrowers can benefit from the various public and private programs that exist to help borrowers work out of a default.

Id. at 926-97. Adopting the bright-line rule that the voluntary dismissal of an action to foreclose a mortgage, by itself, decelerates the note as a matter of law, provides certainty and eliminates the need to scrutinize post-dismissal conduct to determine if the lender intended to decelerate the note or abandon acceleration.

¶19 Additional notice of deceleration, as indicated by PNC Bank, is not necessary. Notice of the dismissal is notice of deceleration. The lender's commencement of a mortgage foreclosure action is sufficient to put the borrower on notice that the loan has been accelerated. It corresponds that the lender's voluntary dismissal is sufficient to put the borrower on notice that acceleration has been abandoned. As long as the borrower receives proper notice of the dismissal, no additional notice of deceleration is required. It is undisputed that the Witherspoons received notice of BNYM's voluntary dismissal without prejudice.

¶20 With respect to PNC Bank's requirement that the lender give the borrower notice that the installment obligation has been reinstated, we find that this is satisfied by the dismissal itself. Dismissal of the foreclosure action reinstates the parties' pre-acceleration rights and obligations as a matter of law. Additional notice of reinstatement of the installment obligation is not required. Revocation or abandonment of acceleration discontinues the obligation to make a single lump sum payment for the entire loan balance and reinstates the borrower's obligation to make installment payments on the note. Voluntary dismissal also reinstates the lender's right to exercise the option to accelerate and foreclose based on the borrower's default.

¶21 We hold that the district court and the Court of Civil Appeals erred by concluding that BNYM's voluntary dismissal of the first foreclosure action did not decelerate the loan. The Court of Civil Appeals's opinion is vacated, and the trial court's order granting summary judgment to the Witherspoons based on the statute of limitations defense is reversed. The cause is remanded to the trial court for further proceedings.

¶22 PNC Bank's analysis and determination that the voluntary dismissal of a foreclosure action, by itself, does not decelerate the loan as a matter of law is expressly overruled. See PNC Bank, 2020 OK CIV APP 60PNC Bank's analysis and determination that the statute of limitations begins to run when the lender exercises the option to accelerate the note--not the date of default--is correct and left undisturbed by today's Opinion. Id., ¶¶ 25-31, 53, 479 P.3d at 244-46, 249.

CONCLUSION

¶23 BNYM exercised its option to accelerate the installment note when it filed a petition to foreclose the mortgage on July 1, 2014. BNYM decelerated the note when it voluntarily dismissed the foreclosure action on October 13, 2014. MTGLQ then exercised its option to accelerate the installment note when it filed a petition to foreclose the mortgage on December 7, 2018. The petition was timely filed.

CERTIORARI PREVIOUSLY GRANTED;
ORDER OF THE COURT OF CIVIL APPEALS IS VACATED;
JUDGMENT OF THE TRIAL COURT IS REVERSED;
CAUSE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.

CONCUR: Kane, C.J., Rowe, V.C.J., Kauger, Winchester, Gurich, Combs, Darby, and Kuehn, JJ.

NOT PARTICIPATING: Edmondson, J.

FOOTNOTES

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

The acceleration clause in paragraph 22 of the Mortgage provides:

Lender shall give notice to Borrower as required by Applicable Law prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 35 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; and (e) any other information required by Applicable Law. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. . . .

optional acceleration clause. Additionally, applicable law and/or the Note and Mortgage require that the lender give the borrower notice of default and 35 days to cure the default by bringing the loan current or agreeing to a modification agreement or a repayment plan prior to exercising the right to accelerate. See supra note 1; 24 C.F.R. § 201.50.

PNC Bank, N.A. v. Unknown Successor Trs., 2020 OK CIV APP 60479 P.3d 238